**Salvador TIRADO, Petitioner**

v.

**WARDEN, Respondent.**

**No. CV 08–00950–JFW (VBK).**

United States District Court,
C.D. California,
Western Division.

July 23, 2008.

Salvador Tirado, Vacaville, CA, pro se.

Kathy Susan Pomerantz, Sarah Jean Farhat, CAAG – Office of Attorney General, Los Angeles, CA, for Respondent.

## JUDGMENT

JOHN F. WALTER, District Judge.

Pursuant to the Order Accepting and Adopting the Report and Recommendation of the United States Magistrate Judge, and dismissing the Petition for Writ of Habeas Corpus ("Petition") with prejudice,

**IT IS ADJUDGED** that the Petition is dismissed with prejudice.

ORDER (1) ACCEPTING AND ADOPTING THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, AND (2) DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS

Pursuant to 28 U.S.C. § 636, the Court has made a *de novo* review of the Petition for Writ of Habeas Corpus ("Petition"), Respondent's Answer, Petitioner's Traverse, all of the records herein and the Report and Recommendation of the United States Magistrate Judge ("Report").

**IT IS ORDERED** that: (1) the Court accepts and adopts the Report and Recommendation, and (2) Judgment be entered dismissing the Petition with prejudice.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

VICTOR B. KENTON, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable John F. Walter, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## INTRODUCTION

Petitioner, a California state prisoner proceeding *pro se*, filed a "Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition")," pursuant to 28 U.S.C. § 2254, on February 12, 2008. Respondent filed an Answer and Notice of Lodging ("Answer") on April 29, 2008. Petitioner filed a Traverse ("Traverse") on May 21, 2008.

The matter has been deemed submitted and is ready for decision. Having reviewed the allegations of the Petition and the matters set forth in the record, the Answer and the Traverse, it is recommended that the Petition be dismissed with prejudice.

## PRIOR PROCEEDINGS

Petitioner was convicted by a Los Angeles County Superior Court jury of two counts of spousal rape, pursuant to California Penal Code ("PC") § 262(a)(1). On September 21, 2006, Petitioner was sentenced to six years in state prison. (Lodged Document ["Doc."] 1, 99–103.) The California Court of Appeal affirmed his conviction in full. (Lodged Document 1 at 104; Lodged Doc. 6.) Petitioner's Petition for Review in the California Supreme Court was summarily denied on January 30, 2008. (Lodged Docs. 7 and 8.)

## FACTUAL SUMMARY

As found by the California Court of Appeal on direct review, the following facts support Petitioner's conviction:

"On June 22, 2006, Ms. G. was leaving her apartment in Los Angeles to pick up two children she cared for and to take them to school when she encountered [Petitioner], her husband, from whom she was separated. He pulled her sweater and said he wanted to talk to her. She told him to go away and that she did not want him to bother her.

She dropped off the children at school and while returning home, she ran into [Petitioner] again. He told her he wanted to live with her again. Ms. G. told him she did not want anything to do with him. Sometime later when Ms. G. opened the door to her apartment, [Petitioner] pushed the door inward and Ms. G. fell into a chair that was behind the door. She told [Petitioner] she did not want him there and that he should take his "stuff" and leave. [Petitioner] told her he would not leave. He grabbed her and threw her onto the bed and said he wanted to have sex with her. Ms. G. said she "didn't want to be with him and . . . didn't want to see him again." [Petitioner] then "forced [her] to be with him." He took his clothes off, got on top of her and forced her to have intercourse with him. Ms. G. told him he should not do "this" and should leave. Ms. G. continued to tell [Petitioner] to stop and tried to get him off her but he overpowered her. At some point [Petitioner] stopped and went to the bathroom. Ms. G. tried to escape but [Petitioner] "put himself behind the door and did not let [her] out." [Petitioner] again pushed Ms. G. onto the bed and forced her to have sex with him again. Ms. G. was feeling very bad. She would close her legs, trying to push him off, but "he would in a very ugly manner push [her] open. . . ." This continued for approximately three hours. [Petitioner] stopped again and went to the bathroom for "seconds." When he returned from the bathroom, he "went down onto the carpet to watch television." Ms. G. could not leave because [Petitioner] "would keep running to cover the door." Ms. G. tried to speak nicely to him so that he would not get upset. She asked him to go to the bathroom to brush his teeth and told him that she would prepare some food. While he was in the bathroom, she called the police. When [Petitioner] finished in the bathroom, he forced Ms. G. onto the bed again and got on top of her. She tried "to take him off [her]." She was crying and asked him to please leave the house. Police entered the apartment and took him off her.

On June 22, [Petitioner] was not living at the apartment. Five days before, Ms. G. had asked him to leave. Prior to his leaving, Ms. G. had consensual intercourse with [Petitioner]. It was always forced on her, but she never said anything because he would say he was her husband. She never told him no. Ms. G. and [Petitioner] had been married for approximately 10 years. Prior to June 17, they had lived together at the apartment for about seven weeks. Before that, they had been separated for two years. After the two years of separation, Ms. G. did not want to take [Petitioner] back but he kept bothering her. [Petitioner] would follow her everywhere. Ms. G. and [Petitioner] lived together for two to three years during their marriage.

Los Angeles Police Officer Antonio Garcia responded to Ms. G.'s apartment to investigate a possible domestic dispute with a possible rape. He stood just outside the closed apartment door and heard a woman crying, asking to be let go. Officer Garcia believed that a possible rape was occurring and he and his partner entered the apartment through the unlocked door. He observed Ms. G. crying and on her back on the bed. [Petitioner's] lower body was between her legs. Ms. G. made eye contact with the officer and asked for help in Spanish. Officer Garcia observed [Petitioner] pull himself away from under Ms. G.'s skirt, grab his penis and place it inside his boxer shorts. Officer Garcia asked [Petitioner] for identification and

[Petitioner] responded, "That is my wife. I can do whatever I want."

Los Angeles Police Officer Hector Chaidez transported [Petitioner] from the apartment to the UCLA Medical Center and observed scratches on [Petitioner's] back.

On July 8, 2006, Ms. G. received a letter from [Petitioner] asking her to lie for him. On cross-examination, she admitted that [Petitioner] did not directly ask her to lie. Ms. G. explained that [Petitioner] wanted her to tell the police they were "arguing" and that she was "angry because [he] didn't make it home."

(Lodged Doc. 6 at 2–4.)

### PETITIONER'S CONTENTION

Petitioner contends that error was committed because the trial court denied his request for a *Mayberry*[1] instruction and a properly instructed jury would not have voted to convict. (Petition at 3–4.)

### DISCUSSION

### I

### STANDARD OF REVIEW

#### A. *The AEDPA.*

The Anti–Terrorism and Effective Death Penalty Act ("AEDPA") applies to all federal petitions filed after AEDPA's effective date of April 24, 1996. *Woodford v. Garceau*, 538 U.S. 202, 210, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003); *Rios v. Rocha*, 299 F.3d 796, 799 n. 4 (9th Cir.2002); *Fuller v. Roe*, 182 F.3d 699, 702 (9th Cir.1999) (*per curiam*). As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529

U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

■■■ Section "2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). The U.S. Supreme Court has explained that:

> "[u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495; *see Weighall v. Middle*, 215 F.3d 1058, 1061 (9th Cir.2000) (discussing *Williams*). "An unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. 1495. The

---

1. *People v. Mayberry*, 15 Cal.3d 143, 125 Cal.     Rptr. 745, 542 P.2d 1337 (1975)

AEDPA "authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti,* 537 U.S. 19, 25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) *reh'g denied,* 537 U.S. 1149, 123 S.Ct. 957, 154 L.Ed.2d 855; *accord Mitchell v. Esparza,* 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003).

■ While Supreme Court precedent is the only authority that is controlling under the AEDPA, this Court may "look to Ninth Circuit case law as persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law." *Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir.2003) (quoting *Luna v. Cambra,* 306 F.3d 954, 960 (9th Cir.) (internal quotation marks and citation omitted), amended by 311 F.3d 928 (9th Cir.2002)).

Further, the AEDPA provides that state court findings of fact are presumed to be correct unless Petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ Finally, the AEDPA "does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1)— whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

### B. *Application Of The AEDPA To The Present Case.*

■ Petitioner raised his instructional error claim in the California Court of Appeal, which rejected that claim in a written opinion. (Lodged Doc. 6.) The California Supreme Court rejected the same claim on the merits without explanation or citation. (Lodged Docs. 7 and 8.) Nevertheless, "[w]here there has been one reasoned state judgment rejecting a federal claim, [federal courts are to presume] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Thus, with respect to this claim, this Court will consider the reasoning of the California Court of Appeal to determine whether the California Supreme Court's decision is contrary to, or an unreasonable application of, federal law.

### II

### PETITIONER IS NOT ENTITLED TO FEDERAL HABEAS RELIEF ON HIS CLAIM THAT THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON AN AFFIRMATIVE DEFENSE CONSTITUTED REVERSIBLE ERROR

Petitioner alleges that the trial court erroneously refused to give the defense's requested instruction on the affirmative defense of reasonable good faith belief as articulated in *People v. Mayberry,* 15 Cal.3d 143, 125 Cal.Rptr. 745, 542 P.2d 1337 (1975). That instruction was embodied in CALJIC No. 10.65, which provided in relevant as follows:

" "In the crime of unlawful forcible rape, criminal intent must exist at the time of the commission of the unlawful forcible rape. [¶¶] There is no criminal intent if the defendant had a reasonable and good faith belief that the other person voluntarily consented to engage in sexual intercourse. Therefore, a reasonable and good faith belief that there was voluntary consent is a defense to such a charge[, unless the defendant thereafter became aware or reasonably should have been aware that the other person no longer consented to the sexual activity.] [¶¶] [However, a belief that is based

upon ambiguous conduct by an alleged victim that is the product of conduct by the defendant that amounts to force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person of the alleged victim or another is not a reasonable good faith belief.] [¶¶] If after a consideration of all of the evidence you have a reasonable doubt that the defendant had criminal intent at the time of the accused sexual activity, you must find him not guilty of the crime." "

(Answer at 11.)

■ As an initial matter, Respondent contends that Petitioner's claim is barred by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). (Answer at 7–10.) The United States Supreme Court has instructed that when a *Teague* claim has been "properly raised by the state," a federal habeas court must first determine whether a *Teague* bar exists before it may proceed to the merits of the petitioner's substantive claims. *Horn v. Banks*, 536 U.S. 266, 271–72, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002); *see also Leavitt v. Arave*, 383 F.3d 809, 816 (9th Cir.2004). Although a *Teague* claim that is not argued, or made only "in passing," need not be addressed, *Arredondo v. Ortiz*, 365 F.3d 778, 781–82 (9th Cir.2004), this Court finds that Respondent has sufficiently presented its *Teague* argument here. Furthermore, for the following reasons this Court agrees that *Teague* bars Petitioner's claim.

■ The *Teague* rule is a "nonretroactivity principle" that "prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Caspari v, Bohlen*, 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). Under *Teague*, a "new rule" is one which "breaks new ground or imposes a new obligation on the states or the federal government," and in which "the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060.

■ The "rule" need not already have been announced by the United States Supreme Court. Where a habeas claim would require the announcement of a new rule, *Teague* applies. *See Saffle v. Parks*, 494 U.S. 484, 487–88, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) ("As [the petitioner] is before us on collateral review, we must first determine whether the relief sought would create a new rule [under *Teague* ]").

Here, Respondent contends that Petitioner is attempting to advance a new procedural rule, namely, that a state criminal defendant has a constitutional right to an affirmative defense on reasonable good faith belief in a spousal rape case. The Supreme Court's holding in *Gilmore v. Taylor*, 508 U.S. 333, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) effectively defeats the contention that Petitioner's constitutional rights were violated by the failure to give the instruction. In that case, the petitioner was charged with murder, but contended at trial that he was only guilty of voluntary manslaughter. Petitioner contended that the challenged instructions prevented the jury from considering evidence of his affirmative defense. While the Supreme Court conceded that these instructions "created a risk that the jury would fail to consider evidence that related to an affirmative defense ..." (*Id.* at 343, 113 S.Ct. 2112), the Court held that a constitutional violation did not occur. Contrary to Petitioner's argument that the jury instructions given interfered with his fundamental right to present a defense, the Court specifically identified constitutional guarantees as applying to a meaningful opportunity to present a complete defense, and, as related to that, the exclusion of evidence. Referring to its prior decisions which had

found that constitutional principles were implicated in these circumstances, the Supreme Court noted that,

> "None of them involved restrictions imposed on a defendant's ability to present an affirmative defense. Drawing on these cases, respondent argues that the right to present a defense includes the right to have the jury consider it, and that confusing instructions on state law which prevent a jury from considering an affirmative defense therefore violate due process. But such an expansive reading of our cases would make a nullity of the rule reaffirmed in *Estelle v. McGuire, supra,*[2] that instructional errors of state law generally may not form the basis for federal habeas relief."

(*Id.* at 343–344, 113 S.Ct. 2112.)

■ Analogously, a state criminal defendant does not have the constitutional right to affirmative defense instructions on lesser included offenses. Although this right has been recognized in capital cases, *Beck v. Alabama,* 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the United States Supreme Court has never extended the right to criminal defendants in non-capital cases. *See Solis v. Garcia,* 219 F.3d 922, 928–29 (9th Cir.2000). Indeed, the Ninth Circuit has previously held that this type of claim is barred by *Teague*'s non-retroactivity principle. *See Solis,* 219 F.3d at 929 (holding that *Teague* "barred this Court from changing the law regarding failure to instruct errors in the context of a habeas petition") (citing *Turner v. Marshall,* 63 F.3d 807, 819 (9th Cir.1995), *overruled on other grounds by Tolbert v. Page,* 182 F.3d 677 (9th Cir. 1999) (*en banc*)).

■ Even assuming that *Teague* does not bar Petitioner's claim, the failure of a state trial court to instruct on affirmative defense instructions in a non-capital case

does not present a federal constitutional question and, therefore, Petitioner's claim is not cognizable on federal habeas review. *See Solis,* 219 F.3d at 929 (citing *Windham v. Merkle,* 163 F.3d 1092, 1106 (9th Cir.1998)); *Chaidez v. Knowles,* 258 F.Supp.2d 1069, 1095–96 (N.D.Cal.2003).

Finally, even construing Petitioner's claim more broadly as alleging that the trial court improperly denied him the right to present the defense theory of the case, *see Solis,* 219 F.3d at 929 (noting that "defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule"), the claim does not warrant federal habeas relief.

■ Generally, "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). To obtain federal collateral relief for an error in a jury charge, the petitioner must show that the instructional error so infected the entire trial that the resulting conviction violated due process. *Id.* at 72, 112 S.Ct. 475. The error must have had "substantial and injurious effect or influence in determining the jury's verdict." *California v. Roy,* 519 U.S. 2, 4–6, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (citation omitted); *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (citation omitted); *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted). The jury instructions must be considered as a whole and in the context of the trial record. *Estelle,* 502 U.S. at 72, 112 S.Ct. 475. An omission or an incomplete jury instruction is less likely to be prejudicial than a misstatement of the law.

**2.** *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct.     475, 116 L.Ed.2d 385 (1991).

*Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). Thus, a habeas petitioner whose claim involves the failure to give a particular instruction bears an "especially heavy" burden. *Id.*

■■■ Petitioner has not met his burden here. First, the trial court did not err as a matter of state law in declining to give the requested instruction. The California Court of Appeal addressed this issue of state law in the following portion of its Opinion:

> "[Petitioner] contends the trial court prejudicially erred by refusing to instruct the jury with a *Mayberry* instruction, the defense of a "reasonable[,] good faith belief" in consent pursuant to CALJIC number 10.65.
>
> "As ... explained in *People v. Williams* (1992) 4 Cal.4th 354 [14 Cal. Rptr.2d 441, 841 P.2d 961] ..., the *Mayberry* defense 'has two components, one subjective, and one objective. The subjective component asks whether the defendant honestly and in good faith, albeit mistakenly, believed that the victim consented to sexual intercourse. In order to satisfy this component, a defendant must adduce evidence of the victim's equivocal conduct on the basis of which he erroneously believed there was consent. [¶] In addition, the defendant must satisfy the objective component, which asks whether the defendant's mistake regarding consent was reasonable under the circumstances. Thus, regardless of how strongly a defendant may subjectively believe a person has consented to sexual intercourse, that belief must be formed under circumstances society will tolerate as reasonable in order for the defendant to have adduced substantial evidence giving rise to a *Mayberry* instruction.' [Citation.]" (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1148 [47 Cal.Rptr.3d 575, 140 P.3d 866].)

"[A] requested instruction regarding mistake of fact was required when 'some evidence "deserving of ... consideration" ' existed to support that contention. [Citation.] In *People v. Flannel* (1979) 25 Cal.3d 668, 684–685 and fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1] [our Supreme Court] explained that a trial court must give a requested instruction only when the defense is supported by 'substantial evidence,' that is, evidence sufficient to 'deserve consideration by the jury,' not 'whenever any evidence is presented, no matter how weak.' Thus, in determining whether the *Mayberry* instruction should be given, the trial court must examine whether there is substantial evidence that the defendant honestly and reasonably, but mistakenly, believed that the victim consented to sexual intercourse." (*People v. Williams, supra*, 4 Cal.4th 354, 361 [14 Cal.Rptr.2d 441, 841 P.2d 961].)

Here, there was no evidence warranting the instruction. [Petitioner] did not testify, and the prosecution's evidence undermined [Petitioner's] theory. Ms. G. testified that she continuously pled with [Petitioner] to stop what he was doing and to let her go. She physically tried to get [Petitioner] off of her but he overpowered her. She repeatedly told [Petitioner] that she wanted nothing to do with him. Ms. G. struggled to keep her legs together but [Petitioner] pushed them open. Ms. G. tried to escape when [Petitioner] went to the bathroom, but [Petitioner] "put himself behind the door and did not let [her] out." That towards the end of the attacks Ms. G. offered to cook for [Petitioner] and requested that he brush his teeth does not amount to equivocal conduct that could indicate consent. The conduct was the product of Ms. G.'s fear and an attempt to keep [Petitioner] from getting upset. (*See People v. Williams, su-*

*pra,* 4 Cal.4th at p. 363 [14 Cal.Rptr.2d 441, 841 P.2d 961].) Additionally, "[t]he relevant inquiry under *Mayberry* ... is whether [Petitioner] believed [the victim] consented to have intercourse, not whether she consented to spend time with him." (*Id.*) The fact that Ms. G. and [Petitioner] previously engaged in consensual sex was insufficient to require the instruction. It had no tendency to prove or disprove [Petitioner's] state of mind at the time of the offenses when Ms. G. repeatedly told [Petitioner] she did not want to have sex. (*See People v. Simmons* (1989) 213 Cal. App.3d 573, 580–581 [261 Cal.Rptr. 760].) Additionally, Officer Garcia testified that before entering the apartment he heard Ms. G. pleading with [Petitioner] to get off of her. Officer Garcia also testified that when he asked [Petitioner] for identification, [Petitioner] responded "This is my wife. I can do whatever I want," indicating he did not believe he needed his wife's consent to engage in sexual intercourse with her. Based on the foregoing, the trial court did not err in refusing to give the requested jury instruction."

(Lodged Doc. 6 at 4–7.)

While Petitioner vigorously contends that the stare of the evidence was sufficient at trial to merit giving the requested instruction, this Court is bound by the limits of AEDPA, and under that standard, cannot conclude that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, pursuant to 28 U.S.C. § 2254(d). Plainly put, the Court agrees that there was no substantial evidence as required by state law that Petitioner possessed a reasonable but mistaken belief that the victim consented to the sexual act. Absent substantial evidence in the record of equivocal conduct which would have led Petitioner to reasonably and in good faith believe that there was consent when in fact it did not exist, the trial court was, pursuant to applicable state law, under no obligation to give the requested instruction. *See People v. Williams,* 4 Cal.4th 354, 14 Cal.Rptr.2d 441, 841 P.2d 961 (1992). Indeed, the evidence in the record did not establish that Petitioner honestly or in good faith believed that the victim consented to the sexual act. While Petitioner points out what he contends is equivocal conduct on the part of the victim, state law clearly establishes that any such conduct which was the product of force, violence, duress, menace, or fear of immediate unlawful bodily injury makes the defense unavailable. (*See People v. Williams,* 4 Cal.4th at 364, 14 Cal.Rptr.2d 441, 841 P.2d 961; *see also* CALJIC No. 10.65.) Indeed, the evidence is inconsistent with the existence of a subjective good faith belief in consent, and furthermore, does not establish objectively that Petitioner's mistake regarding consent was reasonable under the circumstances, as is required by *Mayberry.* Thus, the Court finds no reason or basis under AEDPA to conclude that the state court's determination of the facts was unreasonable.

For the foregoing reasons, the Court recommends that habeas relief be denied, and the Petition be dismissed with prejudice.

### *RECOMMENDATION*

**IT IS THEREFORE RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: June 11, 2008