**Niek GROEN, Petitioner,**

v.

**T. BUSBY, Warden, Respondent.**

**Case No. CV 10–9904–CJC (SP).**

United States District Court,
C.D. California.

July 27, 2012.

Niek Groen, Blythe, CA, pro se.

Viet H. Nguyen, CAAG-Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CORMAC J. CARNEY, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, records on file, and the Report and Recommendation of the United States Magistrate Judge. Further, the Court has engaged in a de novo review of those portions of the Report to which petitioner has objected. The Court accepts the findings and recommendation of the Magistrate Judge.

IT IS THEREFORE ORDERED that Judgment will be entered denying the Petition and dismissing this action with prejudice.

### JUDGMENT

Pursuant to the Order Accepting Findings and Recommendation of United States Magistrate Judge,

IT IS HEREBY ADJUDGED that the Petition is denied and this action is dismissed with prejudice.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SHERI PYM, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Cormac J. Carney, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

### I.

### INTRODUCTION

On December 23, 2010, petitioner Niek Groen, a California prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition"), challenging a 2008 state court conviction for child molestation. Petitioner asserts two grounds for relief: (1) his right to due process was violated when the trial court admitted evidence of his two prior sexual offenses; and (2) his right to due process was violated when the trial court admitted into evidence "a non-pornographic book and two non-pornographic digital video discs (DVDs) depicting merely semi-naked youths." Pet., P. & A. at 5. On March 4, 2011, respondent filed an Answer to the Petition ("Answer"). No reply was filed by petitioner.

Petitioner's first claim is *Teague*-barred, as it asks this court to announce a new rule of constitutional law, that admission of prior sexual offenses violates due process. Further, both of petitioner's claims are largely challenges to evidentiary rulings under state law that are not cognizable on federal habeas review. And in any event, neither claim establishes that admission of the evidence in question rendered the trial fundamentally unfair so as to violate the

Due Process Clause. Accordingly, the Petition should be denied.

## II.

### BACKGROUND

#### A. Factual Background[1]

In 2004, petitioner was released from prison after serving a sentence for child molestation. In 2007, while living in a trailer park, petitioner became acquainted with 11–year–old Dylan D. who lived in the same trailer park with Richard Arce, Dylan's mother's boyfriend. Petitioner's trailer sat directly across a parking area from Arce's trailer. Dylan's mother lived in a car parked outside her mother-in-law's trailer in the same park.

In the fall of 2007, when his mother was jailed, Dylan began living in a foster home. He continued in foster care even after his mother's incarceration ended but visited her and his grandmother at the trailer park. Dylan's older brother Mikey sometimes visited his family at the trailer park on the same days that Dylan did. Occasionally some of the boys who lived in the same foster care home accompanied Dylan to the trailer park. After visiting with his mother, Dylan and the other boys usually played ball games in the parking area between petitioner's and Arce's trailers.

Petitioner was friendly with Dylan's mother but they were not romantically involved. He took Dylan and his mother to Knott's Berry Farm and sometimes bought Dylan's mother clothes and other gifts. Petitioner also took them for meals at Norms, Sizzlers, and Burger King. Over the course of a few months petitioner gave Dylan several gifts, including a computer game, a cell phone, clothes, and bicycles. He gave Dylan the cell phone for his birthday on December 1, 2007.

Petitioner occasionally picked Dylan up from the foster home and brought him to the trailer park to see his family. On one occasion petitioner gave the foster mother carpet samples from the carpet company where he was employed.

When visiting his mother, Dylan often went into petitioner's trailer to use the bathroom, get a drink, rest, or watch movies.

#### 1. Count 1

A few days before Christmas 2007, petitioner called to Dylan to come into his trailer. Dylan complied and lay down because his back hurt. After massaging Dylan's back with a massager, petitioner put his hand down Dylan's pants and fondled his buttocks, then turned Dylan over onto his back, unbuttoned his pants, and touched his penis. Dylan told petitioner to stop and tried to push petitioner's hand away but petitioner kept his hand on Dylan's penis, and told him to be quiet. Dylan ran out of the trailer and down the street. He later returned to the trailer and petitioner drove him back to his foster home. Dylan told no one about what happened because he felt it was his fault.

Over the next few days, Dylan saw and spoke to petitioner several times without incident. On Christmas Day, Dylan, his mother, brother, sister, and Arce visited petitioner's trailer to celebrate the holiday. Petitioner gave Dylan a bicycle and pre-

---

1. The court adopts, with a few minor modifications, the recitation of facts set forth in the May 27, 2010 opinion of the California Court of Appeal, which this court finds is an accurate summary based on its review of the record. See Lodg. No. 6 at 2–8; see also 28 U.S.C. § 2254(e)(1) (facts presumed correct).

Due to missing pages in the lodged document, the court—in subsequent citations to the California Court of Appeal's opinion—will cite to the unpublished Westlaw opinion, People v. Groen, 2010 WL 2106548 (Cal.App. May 27, 2010).

sented each of Dylan's family members with gifts as well.

### 2. *Counts 2 and 3*

A day or so after Christmas, petitioner played an adult pornographic video for Dylan. He watched only part of it and asked petitioner to take him home. Petitioner complied. A few days later Dylan and his brother Mikey were playing football in the parking area of the trailer park. When Dylan went into petitioner's trailer to use the bathroom, petitioner stopped Dylan, held onto Dylan's shoulder, and placed his hand down the front of Dylan's pants. Dylan ran outside and rejoined his brother. Later that day, the boys were still playing ball when petitioner called out to Dylan. Dylan entered the trailer and sat down. Petitioner touched Dylan's penis under Dylan's underwear with his hand. Dylan told him to stop, and said that it did not "feel right," but petitioner pushed Dylan's hand away. Dylan fled the trailer and called out for his brother.

Again, Dylan told no one. He was afraid that if he disclosed what happened he would not be able to spend time with his brother.

After this incident petitioner called Dylan on his cell phone nearly every day but Dylan did not answer because he did not want to talk to him. When his bicycle broke, however, he called petitioner for help. They drove to a bicycle shop where, at Dylan's request, petitioner bought him a new bicycle.

### 3. *Petitioner's Arrest*

On January 16, 2008, Dylan telephoned his mother and told her that petitioner had touched him inappropriately. Later, when Arce and his mother arrived at the foster home, Dylan told them what had transpired in more detail. Although Arce and Dylan's mother told the foster mother to keep Dylan away from petitioner, they did not call the police.

Leaving the foster home, Arce went directly to petitioner's trailer and called for him to come out. Arce cursed at petitioner, called him "a sick mother something," a "punk," and smashed the windshield of petitioner's truck with a shovel. From inside the trailer petitioner said, " 'I'm sorry, I'm sorry, I'm sorry.' " Within minutes, police arrived and arrested Arce for vandalism. Police also detained petitioner.

### 4. *Search of Petitioner's Home*

On January 17, 2008, police interviewed Dylan at his elementary school. The next day police executed a search warrant on petitioner's trailer where they found a framed photograph of Dylan on a bedside table, a massager, a book entitled "The American Boy" containing photographs of young teenage boys, and two DVDs entitled "Crimean Vacation." The DVDs depicted young boys, between the ages of 11 and 13, naked or in bathing suits, playing in either the ocean or in a sauna or Jacuzzi. A portion of one of the DVDs was played for the jury at trial.

### 5. *Prior Sexual Offenses*

John W. was called as a witness by the prosecution. He testified that he met petitioner in the early 1980s when he was between nine and eleven years old. Petitioner was the coach of his soccer team and often drove him home from practice in his van. While circling the park, driving home, or before letting him out of the van, petitioner would have John remove his pants or unzip the zipper of his pants and petitioner would masturbate John or orally copulate him. At petitioner's direction, he would then perform the same acts on petitioner.

Once, John, one of his friends, his mother, and petitioner shared a cabin in Big

Bear. John was in bed with his mother when petitioner approached and tried to turn John over. John resisted petitioner by clinging to his mother. On another occasion, petitioner took John to the soccer shop that petitioner's brother owned and petitioner told him to pick out anything that he wanted. In the back room of the shop, petitioner asked John if he knew what semen looked like and made John masturbate him until petitioner ejaculated. On another occasion, petitioner visited John's home where the two roughhoused and threw eggs at each other. Petitioner took John into the shower to wash him off and petitioner orally copulated and masturbated him.

At some point, John's older brother realized what was happening and alerted neighbors who apparently notified police.

In 1982, petitioner was charged with molesting John. He pleaded guilty to those charges.

Another victim, Brian B., was also called as a witness by the prosecution. He testified that he met petitioner in 1977 or 1978 when he was five or six years old. Petitioner coached his older brother's soccer team and, because they shared Dutch heritage, was considered a family friend, entitled to respect and deference. Brian's parents gave petitioner a key and regular access to their house. Petitioner began molesting Brian when Brian was between five to seven years old and the molestation continued for approximately six years. Petitioner orally copulated Brian and fondled his penis. Petitioner also forced Brian to orally copulate and masturbate him, and once attempted to sodomize Brian. Once petitioner had Brian and one of Brian's young friends masturbate in front of him while he watched.

When the molestation began, petitioner warned Brian not to tell anyone or he or his family would be harmed. Brian did not tell anyone because he did not understand what was happening to him.

Brian occasionally saw petitioner being intimate with Brian's older brother and at some point realized that petitioner had been molesting his older brother as well.

Petitioner was charged with molesting Brian, and after pleading guilty to those charges in 1986, he was sentenced to prison.

### 6. *Petitioner's Testimony*

Petitioner testified in his own defense and admitted molesting both John and Brian. He explained that he had desired sex with young boys but had resisted the urge until he met John. He admitted taking advantage of opportunities to be alone with the boy. He pleaded guilty to molesting John because he knew he was guilty and believed that what he did was wrong.

He also admitted taking advantage of the opportunities to be alone with Brian whom he molested, on average, every week, or week and a half. He pleaded guilty to molestation charges involving Brian because, as in the case of John, he was guilty, knew that what he had done was wrong, and was remorseful about his actions. He was sentenced in 1986 and sent to Chino State Prison, then to Folsom State Prison, and from there to the California Men's Colony in San Luis Obispo where he had access to counseling and treatment. He underwent treatment for a year and a half in 1990 to 1991. He realized that he was homosexual and while in prison engaged in homosexual activity.

Doctors evaluated petitioner in 1998 and determined that he was likely to reoffend. He was sent to Atascadero State Prison where petitioner studied relapse prevention methods designed for pedophiles, met with a social worker every other day, and attended group therapy sessions for pedo-

philes. An evaluation in 2004 resulted in a split decision, with one expert concluding that he was not likely to reoffend and another expert concluding that he was likely to reoffend. A different pair of experts interviewed petitioner and determined that he was unlikely to reoffend and petitioner was released from prison on September 17, 2004. He registered as a sex offender and in 2005 bought a trailer home from his brother and moved into the trailer park.

Petitioner no longer desired young boys after his release from prison. He had a several-month adult homosexual relationship in 2005 to 2006. He also had sexual relations a few times with Dylan's mother. He otherwise satisfied his sexual desires by masturbating while looking at adult pornographic materials.

Petitioner adamantly denied that he had ever touched Dylan inappropriately. He testified that when he had committed acts of child molestation in the past he had admitted the charges and pleaded guilty. Petitioner did not plead guilty to the current charges because he was not guilty and was upset and surprised by Dylan's false accusation of molestation. Petitioner also denied Arce's claim that petitioner had said that he was sorry as Arce vandalized his truck.

He denied "grooming" Dylan and his mother to trust him so that they would allow him to be alone with Dylan in order to molest Dylan. Petitioner explained that he gave Dylan and his mother money and gifts, not to "groom" them, but because they were homeless, penniless, and needed his assistance. He denied that he kept Dylan's photo as a "trophy," although he admitted that he had kept a photo of Brian's brother and that his possession of these photos was consistent with a lapse toward reoffending. He explained that Dylan's mother had given him the photo for safekeeping because the pit bull she and Arce kept in Arce's trailer was likely to damage it.

Petitioner explained his possession of the "Crimean Vacation" DVDs and "The American Boy" book. A man he met in prison worked in a video store and petitioner had asked him for John Wayne movies. The man brought these materials as well because he knew that petitioner had been in prison for child molestation. On cross-examination, petitioner admitted that he had masturbated while watching the DVDs and that such behavior could be viewed as a lapse toward reoffending.

### 7. Character Witnesses

Numerous neighbors from the trailer park, Dylan's foster mother, and several family members testified that petitioner was always kind and neighborly and that they had never seen him act, and had never heard rumors that he had acted, inappropriately with any child since his release from prison.

### 8. Rebuttal

In rebuttal, Detective Anderson testified that during an interview after his arrest petitioner said that he presumed he had been arrested for molesting Dylan. He described Dylan as a "little con" who always tried to get petitioner to buy him things. He denied molesting Dylan and said that as a result of his therapy in prison he no longer desired sex with young boys, but admitted that he fought the temptation to molest every day.

### B. Procedural History

On December 15, 2008, a jury found petitioner guilty of one count of forcible lewd act upon a child in violation of California Penal Code § 288(b)(1) (count 1). Clerk's Transcript ("CT") at 36, 91, 128. The jury found petitioner not guilty of forcible lewd act upon a child (Cal.Penal Code § 288(b)(1)) for an act that allegedly

occurred on a separate day involving the same victim (count 3). CT at 38, 92. With respect to the lesser crime of lewd act upon a child in violation of California Penal Code § 288(a) (count 2), the jury was unable to reach a unanimous verdict, and therefore the court declared a mistrial as to that count and eventually dismissed it. CT at 37, 95. Petitioner further admitted true the allegations that he suffered two prior felony convictions (Cal.Penal Code §§ 667(a)(1), 667.5(b), 1170.12(a)-(d)). CT at 54, 55, 59. On February 10, 2009, the trial court sentenced petitioner to a total of 85 years to life in state prison. *Id.* at 126–27.

On May 27, 2010, the California Court of Appeal affirmed the trial court's judgment in a reasoned, unpublished opinion. *Groen,* 2010 WL 2106548, at *1, *8. Thereafter, petitioner filed a petition for review in the California Supreme Court, which was denied without comment on August 11, 2010. Lodg. Nos. 7 and 8.

### III.

### *LEGAL STANDARDS*

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court looks to the last reasoned state court decision as the basis for the state court's justification. *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004). Here, the California Court of Appeal's opinion on May 27, 2010 stands as the last reasoned decision. *See Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000).

### IV.

### *DISCUSSION*

**A. Petitioner is Not Entitled to Habeas Relief Based on the Admission of His Two Prior Sexual Offenses**

Petitioner first contends that the "trial court[']s admittance of [his] prior sexual offenses" violated his right to due process. Pet., P. & A. at 12. Specifically, petitioner asserts that admission of evidence of his two prior sexual offenses was so prejudicial that it rendered his trial fundamentally unfair. *Id.* at 13, 19.

1. *Motion to Exclude Prior Sexual Offenses*

Petitioner moved in limine to exclude evidence of his two prior sex crimes as being more prejudicial than probative, arguing that the evidence presented a "grave risk of causing a danger or risk of confusing or misleading the jurors" into convicting him of the current charges based upon events that occurred many years ago. Reporter's Transcript ("RT") at 2–3. The prosecutor argued that evidence of his prior offenses was relevant and admissible under California Evidence Code §§ 1101 and 1108 to show propensity to commit child molestation, to show his motive and intent, and to refute his claim of rehabilitation.[2] RT at 4–5. In weighing the proba-

**2.** Section 1101 provides that, except as provided in, inter alia, § 1108, "evidence of a

person's character or a trait of his or her

tive value of the evidence against its prejudicial effect under California Evidence Code § 352,[3] the trial court concluded that "there is a very distinct prejudicial effect to such evidence coming in. But the probative value is also very significant, undeniable, and squarely within the provisions of 1108 and the legislative intent." RT at 5. Therefore, the trial court denied petitioner's motion to exclude evidence of his two prior sexual offenses. *Id.*

### 2. *Petitioner's Claim is Barred By Teague*

Respondent contends that petitioner's claim—that the admission of his two prior sexual offenses violated his right to due process—is barred by the anti-retroactivity doctrine set forth in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Answer at 16–19. The court agrees.

■ Under *Teague,* a new rule of constitutional law cannot be applied retroactively on federal collateral review to upset a state conviction or sentence unless: (1) the new rule forbids criminal punishment of "primary, private individual conduct"; or (2) is a "watershed rule[ ] of criminal procedure." *Caspari v. Bohlen,* 510 U.S. 383, 389, 396, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (internal quotation marks and citations omitted). The Supreme Court has made it clear that if the state argues that "the defendant seeks the benefit of a new rule of constitutional law, the [federal habeas] court *must* apply *Teague* before considering the merits of the claim." *Id.* at 389, 114 S.Ct. 948 (citation omitted).

This is true regardless of whether the case is governed by AEDPA. *Horn v. Banks,* 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002).

The Ninth Circuit has held that, in order to assert a *Teague* claim, at a minimum: (1) "*Teague* should be identified as an issue (indeed the first issue)"; (2) "the new rule of constitutional law that falls within its proscription should be articulated"; (3) "the reasons why such a rule would not have been compelled by existing precedent should be explained with particular reference to the appropriate universe of precedent"; and (4) "an argument should be made why the rule contended for is not within one of *Teague*'s exceptions." *Arredondo v. Ortiz,* 365 F.3d 778, 781–82 (9th Cir.2004). *Teague* applies where a habeas claim would require the announcement of a new rule. *See Saffle v. Parks,* 494 U.S. 484, 487–88, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) ("As [the petitioner] is before us on collateral review, we must first determine whether the relief sought would create a new rule under ... *Teague* ...."); *see also Stringer v. Black,* 503 U.S. 222, 228, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) ("If ... the decision [relied upon] did not announce a new rule, it is necessary to inquire whether granting the relief sought would create a new rule because the prior decision is applied in a novel setting, thereby extending the precedent." (citation omitted)). In other words, under *Teague* "[t]he 'rule' need not already have been announced by the United States Supreme

---

character ... is inadmissible when offered to prove his or her conduct on a specified occasion." Cal. Evid.Code § 1101(a). Section 1108(a) states that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Cal. Evid.Code § 1108(a).

**3.** Section 352 permits courts to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Cal. Evid.Code § 352.

Court." *Tirado v. Warden,* 576 F.Supp.2d 1104, 1110 (C.D.Cal.2008).

■ The court agrees with respondent's analysis that granting relief on this claim would require the court to announce a new rule of constitutional law, i.e., that "the admission of prior [sexual] crimes evidence violates the Due Process Clause." Answer at 17. Indeed, the United States Supreme Court has expressly declined to decide whether the introduction of evidence of prior bad acts to show propensity to commit a crime violates due process. *See Estelle v. McGuire,* 502 U.S. 62, 75 n. 5, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); *Larson v. Palmateer,* 515 F.3d 1057, 1066 (9th Cir.2008) ("The Supreme Court has expressly reserved the question of whether using evidence of the defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process."). Thus, the court finds that petitioner seeks the benefit of a new, never-before-announced rule regarding the proscription of the admission of prior uncharged crimes evidence that would be retroactive to this claim.

Such a new rule would not fit within either of the two narrow exceptions to the *Teague* non-retroactivity rule. First, the proposed new rule is not one that places a class of private conduct beyond the power of the State to proscribe, or addresses a substantive categorical guarantee accorded by the Constitution, or de-criminalizes a class of conduct. *See Teague,* 489 U.S. at 311, 109 S.Ct. 1060. Second, the proposed new rule does not fit within the other exception, for "watershed rules of criminal procedure, implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle,* 494 U.S. at 495, 110 S.Ct.

1257 (internal quotation marks and citation omitted). The requirement under § 352 to balance the prejudicial effect of the evidence against its probative value already ensures that evidence admitted under § 1108 will not infringe upon the right to a fundamentally fair trial. *See United States v. LeMay,* 260 F.3d 1018, 1025–26 (9th Cir.2001) (holding that Federal Rule of Evidence 414, which—like California Evidence Code § 1108—allows admission of evidence of a prior sexual offense, does not violate due process because the evidence is still subject to the trial court balancing the probative value of the evidence versus its prejudicial effect, thereby adequately safeguarding a defendant's right to a fair trial).

Accordingly, because the relief petitioner seeks would create a "new rule" that would not be retroactive to petitioner's conviction, and neither exception applies, this claim is barred by *Teague.* Moreover, even if *Teague* did not apply, for the reasons that follow, petitioner's claim fails on the merits.

3. *Admission of Petitioner's Two Prior Sexual Offenses Did Not Violate His Right to Due Process*

■ Foremost, petitioner's contention that the trial court erred in failing to conduct a proper balancing analysis under California Evidence Code § 352 is not cognizable on federal habeas corpus review. *See* Pet., P. & A. at 17. In conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle,* 502 U.S. at 67, 112 S.Ct. 475 ("federal habeas corpus relief does not lie for errors of state law" (internal quotation marks and citations omitted)). A state court's evidentiary ruling is not cognizable on federal habeas review, unless the ruling infringes upon a specific federal constitutional or

statutory provision or deprives the defendant of a fundamentally fair trial as guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir.1995).

■ As discussed above, the United States Supreme Court has never held that the introduction of prior bad acts evidence to show propensity to commit the current crime violates due process. *See Estelle*, 502 U.S. at 75 n. 5, 112 S.Ct. 475; *Larson*, 515 F.3d at 1066. The Ninth Circuit has upheld introduction of evidence of a defendant's prior acts of child molestation under Federal Rule of Evidence 414 as being consistent with due process requirements. *LeMay*, 260 F.3d at 1025–26. The court noted that Rule 414 evidence must pass the requirements of Federal Rules of Evidence 402 and 403 (*LeMay*, 260 F.3d at 1026–27), the federal analogs to § 352. The court reasoned due process requires that admission of prejudicial evidence not render a trial fundamentally unfair, which Rules 402 and 403 together guarantee. *LeMay*, 260 F.3d at 1026–27. Thus, the requirement under § 352 to balance the prejudicial effect of the evidence against its probative value ensures that evidence admitted under § 1108 will not infringe on the right to a fundamentally fair trial guaranteed under the Due Process Clause and is constitutional. *See LeMay*, 260 F.3d at 1025–27.

Moreover, as the California Court of Appeal explained, under § 1108 evidence of a defendant's commission of another sexual offense or offenses is admissible where the defendant is accused of a sexual offense, provided the evidence is not inadmissible under § 1101 or § 352. *Groen*, 2010 WL 2106548, at *5. This court agrees with the Court of Appeal's finding that the trial court was within its discretion in admitting petitioner's two prior sexual offenses. *See id.* at *6. As the Court of

Appeal noted: "[t]he offenses involving [the previous two victims and the instant victim] shared many similarities making the probative value of the evidence very strong." Specifically, the Court of Appeal found that "[i]n each instance, [petitioner] befriended a young boy and his family, gained their trust, and when opportunities arose to be alone with the boys, petitioner forcibly molested them." *Id.* Given that the victim accused petitioner of similar misconduct, it was not fundamentally unfair to introduce this evidence.

At a minimum, the California Court of Appeal's rejection of any claimed error based on the admission of prior sexual offenses was not contrary to any clearly established federal law as determined by the United States Supreme Court, and was not based on an unreasonable determination of the facts. Accordingly, this claim does not merit habeas relief.

**B. Petitioner is Not Entitled to Habeas Relief Based on the Admission of a Book and DVDs Depicting Young Boys Naked or Semi–Naked**

Petitioner next contends that the admission of a book and two DVDs—depicting naked or semi-naked young boys—was "overly prejudicial" and "rendered his trial fundamentally unfair in violation of petitioner's due process rights." Pet., P. & A. at 21. The admission of these materials into evidence does not warrant habeas relief.

*1. Motion to Exclude Books and DVDs*

Petitioner moved in limine to exclude evidence seized during a search of his residence—a book entitled "The American Boy," a book entitled "A Hidden Love," a DVD entitled "Crimean Vacation Part One," and a DVD entitled "Crimean Vacation Part Two"—as being more prejudicial than probative. RT at 20–21. The trial court granted petitioner's motion to ex-

clude "A Hidden Love," which is a book on homosexuality, finding "its probative value is minimal." *Id.* at 22. But the trial court admitted "The American Boy," which depicted young boys in various stages of undress, and allowed the prosecution to play for the jury a few minutes of one of the DVDs depicting mostly naked young boys. *Id.* at 22–23, 39–40, 192–93. The trial court reasoned that although it may not prove any facts in this case, it is relevant to show intent and motive because "a large part of the defense [is] … that the defendant …, as a consequence of prolonged therapy[;] no longer has any … sexual interest in young boys." *Id.* at 22–23.

### 2. Admission of the Book and DVDs Did Not Violate Petitioner's Right to Due Process

■ As discussed above, a state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley,* 465 U.S. at 41, 104 S.Ct. 871; *Walters,* 45 F.3d at 1357. Admission of evidence violates due process only if there is no permissible inference the trier of fact can draw from it. *Boyde v. Brown,* 404 F.3d 1159, 1172 (9th Cir. 2005); *Houston v. Roe,* 177 F.3d 901, 910 n. 6 (9th Cir.1999); *Jammal v. Van de Kamp,* 926 F.2d 918, 920 (9th Cir.1991).

■ Here, as the California Court of Appeal explained, the book and DVDs were "relevant to show that [petitioner] was sexually attracted to young boys … and ha[ve] a tendency in reason to support the inference that he acted on that attraction and did molest [the instant victim]." *Groen,* 2010 WL 2106548, at *7. In addition, the Court of Appeal found that the probative value outweighed the prejudicial effect because, inter alia, the "images were not sexually explicit" and were "less inflammatory than … the evidence of the charged crimes which involved actual fondling of [the victim's] penis and buttocks." *Id.*

This court agrees with the Court of Appeal's findings. Given that petitioner denied the charged allegations and claimed he was rehabilitated and was no longer sexually attracted to young boys, it was not fundamentally unfair to introduce this evidence. Certainly the Court of Appeal's decision was neither contrary to Supreme Court law nor based on an unreasonable determination of the facts.

### V.

### RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.