Filed 3/3/14  P. v. Marin CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>LAZARO JESUS MARIN,<br><br>        Defendant and Appellant. | A138055<br><br>(San Mateo County<br>Super. Ct. No. SC077116A) |

Lazaro Jesus Marin was convicted by jury of petty theft and challenging another person to fight in a public place after he took a bicycle from the parking area of a recycling center.  Marin's defense at trial was that he thought the bicycle was abandoned property, and that he honestly believed he had a right to take it.  The trial court instructed the jury on the defenses of claim of right and mistake of fact.  The People concede that the mistake of fact instruction erroneously required that mistake be not only in subjective good faith, but objectively reasonable.  The People argue that the error was harmless.  We reverse the petty theft conviction because we cannot conclude that the error did not affect the verdict.

## I.    BACKGROUND

Marin was tried by jury on charges of felony second degree burglary (Pen. Code, § 460, subd. (b); count 1),[1] petty theft (§ 484; count 2), and misdemeanor challenging another person to fight in a public place (§ 415, subd. (1); count 3).  As to count 1, it was

---

[1] All further statutory references are to the Penal Code.

1

alleged that he had a prior conviction and prison term within the meanings of sections 1170.12, subdivision (c)(1), and 667.5, subdivision (b). Marin was acquitted on count 1 and convicted on counts 2 and 3.[2] The court suspended imposition of sentence and placed Marin on court probation for 16 months.[3]

*Evidence at Trial*

As relevant to this appeal, the following evidence was presented at trial. Zarc Recycling in South San Francisco was in the business of recycling cans, bottles, electronic equipment, scrap metal and other materials. The Zarc premises were surrounded by a fence with sliding gates for a car entrance and a separate car exit. Inside the entrance was an area where Zarc employees accepted recycling items for weighing and purchase, as well as a parking area where trash was sometimes left by customers.

George Cheung, a buyer for Zarc, testified that Marin was a frequent customer who often loitered on the premises, harassed other customers, and searched through and took items from Zarc's bins of purchased materials without asking or paying for them. Cheung had told Marin not to go near the bins or take things from them. He had also told Marin 5–10 times not to take Zarc property off the premises. Cheung nevertheless continued to purchase items from Marin.

On November 20, 2012, another Zarc customer offered to sell Cheung an old bicycle. Cheung initially declined, and the customer said he would just leave the bicycle for Zarc in the parking area. Cheung decided to pay for the bicycle ($5 or $10) because the seller was a regular customer. Cheung planned to recycle the bicycle and left it in the parking area because he was busy with other customers. Later that morning, Cheung saw Marin ride in through the entrance on a different bicycle, ride over to the parking area, pick up the bicycle Cheung had just purchased, and return to the entrance with the second bicycle. After Cheung finished with customers he was serving, he walked to the entrance and "screamed at [Marin]: that bike belongs to us. It's our property. And I told him not

---

[2] Marin conceded guilt on count 3 in closing arguments and he raises no issue as to that conviction on appeal.

[3] Marin was concurrently on parole on an unrelated offense.

2

to come back." Marin apparently left both bicycles outside the Zarc fence where Cheung said there were some trees. Marin then reentered the Zarc premises, confronted Cheung, and eventually left.[4]

Zarc reported the incident to police and Keawe Sham, an officer with the City of South San Francisco and San Mateo County, located Marin the next day and placed him under arrest. Marin waived his *Miranda*[5] rights and the jury heard Sham's taped interview with Marin. Marin spoke freely about the incident and said he took the bicycle because it was in the customer parking area where customers leave trash and he believed it was abandoned property. He acknowledged that a Zarc supervisor told him not to take the bicycle, told him the bicycle belonged to Zarc, and threatened to have him arrested for stealing. Marin explained, however, that this supervisor had told him previously that Zarc owned any property that was abandoned on their premises, which Marin believed was incorrect. He said the bicycle was junk, worth about 50 cents and it was unreasonable for Zarc to be upset about it. He thought the supervisor was harassing him. When Sham asked Marin what he did with the bicycle, Marin hesitated and said he "threw it somewhere." After several further inquiries, Marin said he "threw it behind . . . the abandoned bank . . . . [¶] . . . [¶] That Union Bank. [¶] . . . [¶] I left it in that little storage area where the trash is. [¶] . . . [¶] I was going to give it back to them if the cops would['ve] come. But the cops didn't even talk to me about it." Sham told Marin that the police looked for him after the incident but could not find him, and Marin responded, "I should['ve] just stayed there. [¶] . . . [¶] . . . I made a mistake in leaving."

Marin testified in his own defense. He denied that he took things from Zarc's bins without asking first; sometimes he would pick up items, but if Zarc staff said he could not take or buy an item, he would put it back. Except for an argument over a clock on November 19, 2012, Marin denied that Cheung had previously told him not to take anything from Zarc premises or thrown him off of Zarc property.

---

[4] Surveillance video of the incident largely confirmed this sequence of events.

[5] *Miranda v. Arizona* (1966) 384 U.S. 436.

On the morning of November 20, 2012, Marin returned intending to apologize for the clock incident the night before. As soon as he arrived, Cheung told him to leave and not to touch anything on Zarc premises. Marin testified that he took the bicycle because he believed it was trash and there was no sign saying not to touch it: he believed he had a legal claim to it. He would not have taken the bicycle if Cheung had said he had paid for it. He did not flee after he took the bicycle. "I . . . waited by the fence [for them] to call the police. And [the manager] waited for me to leave." Marin acknowledged that after he took the bicycle, the manager told him that he could not take anything from the Zarc premises, even trash. Marin said the manager could go ahead and call the police because it was just trash. Marin waited by the trees where he had left the bicycle, but the police never arrived.

*Jury Instructions on Petty Theft*

Consistent with CALCRIM No. 1800, the court instructed the jury that: "To prove that the defendant is guilty of [petty theft], the People must prove that: [¶] 1. [he] took possession of property owned by someone else; [¶] 2. [he] took the property without the owner's [or the owner's agent's] consent; [¶] 3. when [he] took the property he intended to deprive the owner of it permanently[;] AND [¶] 4. [he] moved the property, even a small distance, and kept it for any period of time, however brief. [¶] . . . [¶] . . . For petty theft the property can be of any value, no matter how slight. . . ." The court also instructed, pursuant to CALCRIM No. 251, that the crime of petty theft requires proof that the person "not only intentionally commit the prohibited act, but [did] so with a specific intent . . . [¶] . . . to deprive the owner permanently of the property."

On the claim of right defense, the court instructed in accordance with CALCRIM No. 1863: "If the defendant obtained the property under a claim of right he did not have the intent required for the crime of theft. [¶] The defendant obtained the property under a claim of right if he believed in good faith that he had a right to the specific property and he openly took it. [¶] In deciding whether the defendant believed that he had a right to the property and whether he held that belief in good faith, consider all of the facts known to him at the time he obtained the property, along with all the other evidence in the case.

4

The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith. [¶] The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered. [¶] . . . [¶] The claim-of-right defense does not apply if the claim arose from an activity commonly known to be illegal or known by the defendant to be illegal. [¶] If you have a reasonable doubt about whether the defendant had the intent required for theft, you must find him not guilty of . . . petty theft."

On the mistake of fact defense, the court instructed pursuant to CALCRIM No. 3406: "The defendant is not guilty of . . . petty theft . . . if he did not have the intent required to commit the crime because he reasonably did not know a fact or reasonably and mistakenly believed a fact. [¶] If the defendant's conduct would have been lawful under the facts as he reasonably believed them to be, he did not commit . . . petty theft. [¶] *If you find that the defendant believed that the bicycle was abandoned property and if you find that belief was reasonable, he did not have the specific intent for . . . petty theft*." (Italics added.)

## II. DISCUSSION

The People concede that the jury instruction on the mistake of fact defense was erroneous. A defendant may refute guilt by showing a mistake of fact disproving a required criminal intent. (*In re Jennings* (2004) 34 Cal.4th 254, 276–277.) "A mistake of fact may constitute a defense even though it is unreasonable." (1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Defenses, § 47(2), p. 480, citing *People v. Navarro* (1979) 99 Cal.App.3d Supp. 1.) "For general intent crimes, the defendant's mistaken belief must be both actual and reasonable, but if the mental state of the crime is a specific intent or knowledge, then the mistaken belief must only be actual." (*People v. Lawson* (2013) 215 Cal.App.4th 108, 115.) Bench Notes following CALCRIM No. 3406 recognize this rule and direct that "[i]f the mental state element at issue is either specific criminal intent or knowledge, do not use the . . . language requiring the belief to be

reasonable." (Judicial Council of Cal., Crim. Jury Instns. (2013) Bench Notes to CALCRIM No. 3406, pp. 902–903, citing *People v. Reyes* (1997) 52 Cal.App.4th 975, 984 & fn. 6; *People v. Russell* (2006) 144 Cal.App.4th 1415, 1425–1426 (*Russell*), superseded on other grounds as stated in *People v. Lawson,* at p. 118.) Thus, the instruction should have read, "If you find that the defendant believed that the bicycle was abandoned property, he did not have the specific intent required for . . . petty theft," rather than, "If you find that the defendant believed that the bicycle was abandoned property *and if you find that belief was reasonable*, he did not have the specific intent required for . . . petty theft." (Italics added.)[6]

The question is whether the instructional error was prejudicial.

A.      *Reversible Error Standard*

The parties disagree about the applicable standard for reversible error. Marin argues the error was structural and requires per se reversal of his conviction. He relies on federal appellate decisions holding that an erroneous *refusal* to instruct on a defense as requested by the defendant is reversible error per se. (See *United States v. Escobar de Bright* (9th Cir. 1984) 742 F.2d 1196, 1201–1202 [failure to instruct on a defense supported by evidence and law is per se reversible error]; *United States v. Zuniga* (9th Cir. 1993) 6 F.3d 569, 571–572 [same but recognizing exception where other instructions adequately cover the defense theory]; *United States v. Romm* (9th Cir. 2006) 455 F.3d 990, 1002 [same].) Here, the trial court did not refuse the defendant's request for an instruction on mistake of fact; it gave the instruction in exactly the (erroneous) form submitted by counsel In any event, Ninth Circuit decisions are not binding on this court.

---

[6] The defense requested CALCRIM No. 3406. Counsel were directed by the court to meet and confer, and to provide appropriately redacted instructions to the court. Despite making other revisions to this instruction, counsel failed to delete the incorrect language. Nevertheless, the trial judge court is obliged to fully and correctly instruct the jury on general principles of law, and error is only "invited" if the record shows a conscious and deliberate tactical choice by counsel to request the instruction as given. (*People v. Graham* (1969) 71 Cal.2d 303, 319–320, disapproved on other grounds by *People v. Ray* (1975) 14 Cal.3d 20, 29, fn. 7.) No such deliberate choice is evident here.

6

(*People v. Federico* (2011) 191 Cal.App.4th 1418, 1424, fn. 4.)  In the alternative, Marin argues the error is subject to review under the *Chapman*[7] standard—whether the error was harmless beyond a reasonable doubt.  Applying a *Chapman* standard, an instructional error that removes a material issue from the jury's consideration, may nevertheless be harmless beyond a reasonable doubt if the issue was either necessarily decided under other instructions or if the evidence supporting the issue is so overwhelming that no rational jury could reach a different result.  (*People v. Johnson* (1993) 6 Cal.4th 1, 45–47.)

The People draw our attention to *Russell, supra*, 144 Cal.App.4th 1415, which holds, "Error in failing to instruct on the mistake-of-fact defense is subject to the harmless error test set forth in [*Watson*[8]]."  (*Russell,* at p. 1431.)  As authority for this holding, *Russell* cites *People v. Mayer* (2003) 108 Cal.App.4th 403, 413 (*Mayer*).  (*Russell*, at p. 1431.)  *Mayer*, however, applies *Watson* without any analysis or citation to authority.  (*Mayer*, at p. 413.)  And *Russell* addresses the reversible error standard for a different error:  failure to sua sponte instruct on the mistake of fact defense.  (See *Russell*, at p. 1431; see also *Mayer*, at pp. 412–413 [failure to instruct on mistake of fact, but unclear whether defendant had requested the instruction]; *People v. Hanna* (2013) 218 Cal.App.4th 455, 462–463 [failure to instruct]; *People v. Zamani* (2010) 183 Cal.App.4th 854, 866 [failure to instruct].)  The *Watson* standard of prejudicial error requires the defendant to show it is reasonably probable he or she would have obtained a more favorable result had the instructional error not occurred.  (*Watson, supra*, 46 Cal.2d at p. 836.)  In determining whether such an instructional error was prejudicial, we focus not on what a reasonable jury could have done, but rather what the jury likely would have done in the absence of the error.  (*People v. Breverman* (1998) 19 Cal.4th 142, 177.)  In so doing, we "may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome

---

[7] *Chapman v. California* (1967) 386 U.S. 18.

[8] *People v. Watson* (1956) 46 Cal.2d 818, 836.

is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Ibid.*) This standard requires " ' "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result." ' " (*Russell,* at p. 1432.)

We need not decide, however, which standard of review applies, because we conclude that even under the less rigorous *Watson* standard, we cannot find the error harmless.

B.    *Harmless Error Analysis*

A claim of mistake of fact is an affirmative defense, and a defendant has the burden of raising a reasonable doubt as to whether he harbored a reasonable and good faith belief. (*People v. Simmons* (1989) 213 Cal.App.3d 573, 579 [mistake of fact as to victim's consent in a sexual assault case].) Nevertheless, the prosecution retains the ultimate burden of proving a defendant had the requisite wrongful intent. (*People v. Howard* (1996) 47 Cal.App.4th 1526, 1533, disapproved on other grounds in *People v. Fuhrman* (1997) 16 Cal.4th 930, 947, fn. 11.)

Here the jury entertained at least a reasonable doubt that Marin entered the Zarc yard with the intent to commit theft, since it acquitted him of the felony burglary charge. The only remaining question was then whether Marin had the necessary criminal intent at the time he took the bicycle from the parking area and removed it from the Zarc premises. The People correctly point out that the jury was properly instructed, with respect to the claim of right defense—that Marin was not guilty of theft if he believed in good faith that he had a claim of right to the bicycle, even if his belief was unreasonable (as long as it was not so completely unreasonable that the jury was compelled to conclude the belief was not held in good faith). In convicting Marin, the jury clearly rejected that defense. Marin's alleged mistake of fact—that the bicycle was abandoned—is essentially identical to his claim of right, i.e., that he had the right to take the bicycle because it was abandoned property. Therefore, if we could conclude that the jury necessarily decided that Marin did not have a good faith belief, reasonable or unreasonable, that he had a

right to take the bicycle, we could conclude that the error in the mistake of fact instruction was harmless.

We cannot, however, necessarily draw that inference, because there was another basis on which the jury could have rejected the claim of right defense. The jury was instructed, "The claim-of-right defense *does not apply* if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered."[9] The prosecutor specifically argued to the jury it should reject Marin's claim that he thought he had a right to take the property because "these defenses do not apply," if the defendant conceals the taking after it was discovered, and that Marin did so. She did not differentiate the mistake of fact defense, and told the jury that it should focus on the word "reasonably" and what Marin could reasonably believe.

The evidence was overwhelming that any belief that Marin may have had that he could take the bicycle was objectively unreasonable. Marin acknowledged that he was directly told that he could not take it. But a properly instructed jury could nonetheless have found a reasonable doubt about whether he subjectively believed, albeit unreasonably, that the bicycle was abandoned.

It was undisputed that Marin took the bicycle openly, and Marin consistently claimed he believed the bicycle was abandoned, including his statements to Cheung and a manager during the incident, his statements to Sham, and in trial testimony. Cheung confirmed that customers occasionally left trash in the parking area, and Marin testified without contradiction that he frequently "cleaned up" the trash in that area.

---

[9] This language apparently is based on section 511, which establishes a statutory claim of right defense for embezzlement and has been applied to other theft offenses. (Judicial Council of Cal., Crim. Jury Instns. (2013) Bench Notes to CALCRIM No. 1863 (2013) pp. 1181–1182; *People v. Wooten* (1996) 44 Cal.App.4th 1834, 1848–1849 [discussing § 511]; *People v. Tufunga* (1999) 21 Cal.4th 935, 952, fn.4 [discussing application of § 511 to other theft offenses].) Section 511 provides, "[I]t is a sufficient defense that the property was appropriated *openly and avowedly*, and under a claim of title preferred in good faith . . . ." (Italics added.)

But even if the jury found that this evidence raised reasonable doubt about whether Marin's claimed belief that he had a right to take the bicycle as abandoned property was held in good faith, it may have believed it was required to reject Marin's defense, and find him guilty of petty theft if it found he concealed the bicycle after the taking, either outside the Zarc fence, or later in placing it, as he admitted, behind a bank.

Under these circumstances, we are left with " ' "serious doubt as to whether the error affected the result" ' " (*Russell,* at p. 1432), and reversal is required.

### III.   DISPOSITION

The petty theft conviction is reversed, and the matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

_____
Bruiniers, J.


We concur:


_____
Jones, P. J.


_____
Simons, J.