[No. B030795. Second Dist., Div. Four. Aug. 28, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN SIMMONS, JR., et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I-IV and VI.

**COUNSEL**

Joseph F. Walsh and Fern M. Laethem, State Public Defenders, under appointment by the Court of Appeal, and Patricia L. Reber, Deputy State Public Defender, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Mark Alan Hart and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GEORGE, J.**—After a jury trial, appellants Melvin Simmons, Jr., and Gregory Tillis were found guilty of kidnapping to commit robbery (Pen. Code,[1] § 209, subd. (b); count I), appellant Tillis was found guilty of two counts of assault (§ 240; lesser included offenses of § 245, subd. (a)(1); counts III and IV), both appellants were found guilty of forcible rape (§ 261, subd. (2); count VIII) with a finding they acted in concert (§ 264.1), both appellants were found guilty of attempted robbery (§§ 664, 211; count IX), and appellant Simmons was found guilty of assault with a deadly weapon upon a peace officer (§ 245, subd. (b); count X).[2]

The trial court denied probation and sentenced appellant Simmons to life imprisonment with the possibility of parole for the kidnapping to commit robbery (count I), to seven years for the forcible rape (count VIII), to be served consecutively to the life term pursuant to section 667.6, subdivision (c), and to one-third the midterm of six years, or two years, for assault upon a peace officer (count X). The sentence on count IX was stayed pursuant to section 654.

The trial court denied probation and sentenced appellant Tillis to life imprisonment with the possibility of parole for the kidnapping to commit robbery (count I), and to seven years for the forcible rape (count VIII), to be served consecutively to the life term pursuant to section 667.6, subdivision (c). The court stayed the sentences on the two assaults (counts III and IV) and on the attempted robbery (count IX) pursuant to section 654.

Appellant Simmons contends (1) the evidence is insufficient to sustain the verdicts; and the trial court erred in (2) denying his motion to discharge his appointed counsel; (3) denying his motion for new trial brought on the ground he was prevented from testifying in his own defense; and (4) denying his request that the jury be instructed pursuant to CALJIC No. 2.01 concerning the sufficiency of circumstantial evidence. Both appellants contend that the trial court erred in (5) failing to instruct the jury pursuant to CALJIC No. 10.23 concerning the defense of a reasonable belief as to the consent of the victim to engage in sexual intercourse; and (6) preventing cross-examination of the victim as to criminal charges pending against her. For the reasons discussed below, we affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Appellants Simmons and Tillis were acquitted of robbery (count II). Charges of forcible oral copulation in concert (counts V and VI) and forcible sodomy in concert (count VII) were dismissed.

## FACTS

The victim, Terressa M., was working as a prostitute when she first met appellant Tillis in San Diego in November 1986. She spent part of the Christmas holidays at appellant Tillis's residence in Northern California, where she met appellant Simmons. Between Christmas of that year and early January of 1987, the victim traveled in Northern and Southern California with appellant Tillis. During part of that time, they were accompanied by appellant Simmons. At the time, she had sexual intercourse with appellant Tillis but not with appellant Simmons. Neither man was her pimp.

In early January 1987, the victim left appellants in Los Angeles and returned to her home in San Diego. Appellant Tillis repeatedly telephoned her and told her he wanted her to return to Los Angeles to work for him as a prostitute.

On the evening of January 15, 1987, while the victim was staying at her mother's residence, appellant Tillis telephoned and informed her he was coming to San Diego and wished to speak to her. That night, appellants Tillis and Simmons drove to the residence of the victim's mother, and the victim agreed to help locate a room for appellants. She entered their automobile, but when appellant Tillis requested that she get her wallet she returned to the residence, retrieved her wallet and purse, and reentered the automobile. The trio drove to a nearby gasoline station, where appellant Tillis asked her whether she would work for him as a prostitute. When the victim refused, appellant Tillis informed her that appellants were going to bring her back to Los Angeles and that appellant Tillis was going to beat her up. Appellant Tillis locked the vehicle from the driver's seat so that the victim could not escape. During the drive to Los Angeles, appellant Tillis went through the contents of the victim's purse and retained her money, bankbook, and "ATM" (automated teller machine) card.

When they arrived in Los Angeles, appellants took the victim to a motel. Inside the room, both appellants removed their clothes. The victim sat on the bed and held her hands in front of her. Appellant Tillis told her to put her hands down because he was not going to hit her. When she put her hands down, appellant Tillis struck her in the face with his fist. The victim began to scream, so appellants gagged her. Appellant Tillis ordered the victim to perform oral copulation on appellant Simmons. When she refused, appellant Tillis struck her with the receiver of a telephone. Because the victim feared he would hit her again, the victim performed oral copulation on appellant Simmons.

Appellant Simmons then had anal and vaginal intercourse with the victim. When she resisted and began crying and screaming, appellant Simmons threatened to strike her again. Appellant Tillis then demanded that the victim orally copulate him, and she complied. He did not ejaculate in her mouth. Appellant Simmons went into the bathroom and returned with a cup filled with urine, which he gave to appellant Tillis. Appellant Tillis said to the victim, " 'Bitch, you gonna drink this piss.' " The victim refused, crying and screaming. Appellant Tillis hit the victim in the head with the telephone receiver, and she drank some of the urine. Appellant Simmons commented the cup was not full enough, reentered the bathroom, and returned with a full cup. Appellant Simmons bet appellant Tillis $100 that the victim would not drink the entire cup. After the victim did so, she began to vomit but swallowed her vomit because appellant Tillis had told her he would hit her if she spilled a drop. Appellant Simmons paid appellant Tillis $100.

Next, appellant Tillis asked the victim how much money she had in the bank. When she told him she had $25, he accused her of lying and ordered her to approach him. Appellant Tillis cut off a portion of her braided hair. Appellant Tillis repeated his question as to how much money she had in the bank. When the victim responded she had $25, appellant Tillis cut off more of her hair. He also threatened to cut off one of her fingers and one of her nipples. He then instructed her to put on her clothes because they were going to the bank. Before they left, appellant Simmons stated he would bring his gun. He told the victim if she tried to run, he would shoot off her legs. As they left the motel, appellant Simmons followed the victim and kept his right hand inside the lapel of his robe.

The three drove to the front portion of a local branch of the victim's bank. Appellant Tillis and the victim went to the automated teller machine, and the victim deliberately pushed numbers she knew were not the correct code, hoping that the police would appear. Appellant Tillis repeatedly ordered her to "hurry up." The victim observed a police vehicle driving by and began to run toward it, yelling, " 'Help me.' " Appellant Tillis grabbed the back of her jacket, but she kept running.

It was shortly after 3:40 a.m. when California Highway Patrol Officers Randy Campbell and Scott Wall, driving in a marked patrol vehicle past the bank, observed the victim screaming for help and running toward their vehicle. The officers left their vehicle and approached the two individuals. The victim ran toward Officer Campbell, screaming that appellants had cut off her hair. Officer Campbell motioned her toward the side of the building out of the way, while they attempted to surround appellant Tillis.

Appellant Simmons, who still was seated in the vehicle parked in front of the bank, slid into the driver's seat and started the ignition. Officer Campbell, who was standing in the street near the curb in front of the bank, drew his service revolver, pointed it at appellant Simmons, and ordered him to "freeze." The vehicle accelerated directly toward Officer Campbell from a distance of 40 to 50 feet. When it was within 10 to 15 feet of Officer Campbell, he fired his weapon 5 times. Officer Campbell moved to one side of the automobile, which missed him by inches. Appellant Simmons drove off in the vehicle at high speed.

A subsequent examination of the victim revealed injuries to her face and side. A sexual assault kit was prepared and analyzed. The analysis revealed the presence of semen in the vagina and rectum. The semen in the vagina appeared to have been deposited between four to six hours prior to the examination. There were no injuries to the vaginal or rectal areas.

Although on direct examination the victim denied having worked as a prostitute after the alleged offense, on cross-examination she admitted having done so. She also admitted falsely having told an investigating officer that she was transported in the trunk of the automobile on the trip to Los Angeles, and that after drinking the cup of urine, she had vomited on the floor. The victim admitted falsely having testified at the preliminary hearing that she never had had sexual intercourse with appellant Tillis prior to January 15, 1987, and that during the incident, appellant Simmons had exhibited a gun. She admitted falsely having told the district attorney's office and the police that appellant Simmons had pointed a gun at one of the officers. It was stipulated she also had told the police that appellant Tillis had ejaculated in her mouth, and that appellant Simmons had forced her to drink the urine by putting a weapon to her head and threatening to kill her.

An employee of the motel and his son, both of whom lived in the apartment below the room where appellants and the victim had stayed, testified they did not hear any screaming on the night of the incidents. None of the motel guests had complained that night about screaming.

DISCUSSION

I-IV*

. . . . . . . . . . . . . . . . . . . . .

* See footnote, *ante,* page 573.

## V

### *The Trial Court Did Not Err in Refusing to Instruct the Jury Pursuant to CALJIC No. 10.23*

■ A trial court should give requested instructions on every material question upon which there is evidence substantial enough to be considered by the jury. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1].) ■ Both appellants contend the trial court erred in refusing the defense request to instruct the jury pursuant to former CALJIC (Cal. Jury Instns., Crim. [4th ed. 1979]) No. 10.23 (see now, CALJIC No. 10.65 [5th ed. 1988]), concerning the defense of a reasonable belief as to the consent of the victim to engage in sexual intercourse.

The foregoing defense was recognized in *People* v. *Mayberry* (1975) 15 Cal.3d 143, 157-158 [125 Cal.Rptr. 745, 542 P.2d 1337], and embodied in former CALJIC No. 10.23, which provided: "It is a defense to a charge of forcible rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the defendant the benefit of that doubt and acquit him of said charge."

■ In mandating that such an instruction be given where supported by the evidence, the Supreme Court in *People* v. *Mayberry, supra,* 15 Cal.3d 143, 157-158, also held that the burden is on the defendant to prove he had a bona fide and reasonable belief that the prosecutrix consented to sexual intercourse. The defendant merely is required to raise a reasonable doubt as to whether he entertained such a belief. (*Id.,* at p. 157.) This defense is considered an affirmative defense. (*People* v. *Castillo* (1987) 193 Cal.App.3d 119, 124 [238 Cal.Rptr. 207]; *People* v. *Burnham* (1986) 176 Cal.App.3d 1134, 1143 [222 Cal.Rptr. 630].)

In the majority of cases where the issue has been raised, the defendant testified in his own behalf. (*People* v. *Mayberry, supra,* 15 Cal.3d 143, 157-158; *People* v. *Burnham, supra,* 176 Cal.App.3d 1134, 1143-1144; *People* v. *Rivera* (1984) 157 Cal.App.3d 736, 743 [203 Cal.Rptr. 842]; *People* v. *Hampton* (1981) 118 Cal.App.3d 324, 329 [173 Cal.Rptr. 268]; see also *People* v. *Perez* (1987) 194 Cal.App.3d 525, 530 [239 Cal.Rptr. 569]; *People* v. *Rhoades* (1987) 193 Cal.App.3d 1362, 1368-1369 [238 Cal.Rptr. 909].) In such a case, the instruction must be given despite the defendant's lack of credibility as to the reasonableness of his belief in the victim's consent. (*People* v. *Burnham, supra,* 176 Cal.App.3d 1134, 1148; *People* v. *Rivera,*

*supra,* 157 Cal.App.3d 736, 743; *People* v. *Hampton, supra,* 118 Cal.App.3d 324, 329.)

Even where the defendant does not testify, circumstantial evidence of consent can be sufficient to warrant instruction on this defense. In *People* v. *Anderson* (1983) 144 Cal.App.3d 55, 62 [192 Cal.Rptr. 409], the defendant's five-year-old son, who was present during the commission of the alleged rapes, was the sole defense witness. He testified to facts from which it reasonably could be concluded the victims assented to sexual intercourse. The testimony of one of the victims, indicating she did not attempt to escape from the defendant's vehicle when it was stopped at traffic lights, was considered to be additional circumstantial evidence as to the defendant's belief in consent, warranting the instruction. *(Ibid.)*

In *People* v. *Castillo, supra,* 193 Cal.App.3d 119, 126, the court suggests that circumstantial evidence of a good faith and reasonable belief sufficient to warrant the instruction may be based entirely on the victim's testimony. In *People* v. *Gonzalez* (1983) 141 Cal.App.3d 786 [190 Cal.Rptr. 554], however, the court concluded that CALJIC No. 10.23 need not be given sua sponte where the defendant does not testify and the "only 'evidence' concerning his belief was his counsel's theory [mistake of fact] in closing argument." *(Id.,* at p. 793; see *People* v. *Burnham, supra,* 176 Cal.App.3d 1134, 1147-1148.)

 In the present case, neither of the two appellants testified. The sole defense witness was the motel employee, who offered no testimony on the issue of appellants' belief in the victim's consent. Nothing in the victim's conduct at the time of the offenses would support giving this instruction. There is no evidence to support instructing the jury pursuant to CALJIC No. 10.23 on behalf of appellant Simmons.

The record, however, includes evidence of the victim's prior sexual relations with appellant Tillis. Under recent case law, embodied in CALJIC No. 10.66 (1988), the jury may consider the victim's prior sexual conduct with a defendant as it may bear on whether the defendant had a reasonable belief the victim gave her consent. *(People* v. *Perez, supra,* 194 Cal.App.3d 525, 528-530.) In the *Perez* case, evidence was introduced that the victim and the defendant had had prior consensual intercourse. The defendant testified that the victim did nothing to indicate she did not want to have sexual intercourse on the occasion which formed the basis of the charges. *(Id.,* at pp. 527-528.)

We conclude that evidence of the victim's prior sexual conduct with a defendant, *by itself,* is insufficient to require that the jury be instructed

pursuant to CALJIC No. 10.23, because such conduct has no tendency to prove or disprove the defendant's state of mind at the time of the offense. To warrant this instruction, there must be evidence, whether direct or circumstantial, of the defendant's state of mind at the time the offense was committed. In such a case, the additional evidence that the victim and the defendant previously had engaged in sexual intercourse might properly have a bearing on the reasonableness of the defendant's belief.

In the present case, the victim's testimony regarding the circumstances of the alleged offenses was uncontroverted. If the victim's testimony was believed, the circumstance, standing alone, that she previously had consented to sexual relations with appellant Tillis had no tendency in reason to prove she consented to sexual relations on the date of the alleged offenses. In light of our holding, neither appellant came close to meeting the burden of proof imposed by *People* v. *Mayberry, supra,* 15 Cal.3d 143, 157, of raising a reasonable doubt that appellants entertained a good faith belief in the victim's consent. The trial court did not err in refusing the defense request that the jury be instructed pursuant to former CALJIC No. 10.23.

VI*

. . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

McClosky, Acting P. J., and Goertzen, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 14, 1989.

---

* See footnote, *ante,* page 573.