IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32220-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LUIS ALBERTO DUENAS BARRETO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — In 2014, the Washington Supreme Court overturned twenty-five years of precedent in prosecuting rape charges. The Supreme Court held that due process precludes requiring a defendant, accused of second degree rape, to prove the defense of consent by a preponderance of the evidence since the second degree rape statute imposes the burden of proving forcible compulsion on the State. *State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014). The court reasoned that the concepts of nonconsent and forcible compulsion intertwine such that the State must also show the absence of consent in order to prove forcible compulsion. Thus, a jury in a second degree rape case must be instructed that the State carries the burden to show beyond a reasonable doubt that the

No. 32220-3-III
*State v. Barreto*

alleged victim did not consent. Before the Supreme Court's watershed decision, superior courts routinely instructed juries that the defendant carried the burden to prove consent. Appellant Luis Alberto Duenas Barreto's trial court delivered this standard instruction.

Alberto Barreto appeals his conviction for second degree rape. He contends the teachings of *W.R.* require a new trial. The State concedes instructional error, but argues the error was harmless. We take serious our duty to insure that constitutional error does not impact the outcome of a trial. Nevertheless, after reviewing the entire trial record, we hold the error to be harmless and affirm the conviction because of the lack of evidence of any consent by the victim.

Alberto Barreto also appeals a conviction for attempted second degree rape. He argues insufficient evidence supports the conviction. We disagree and also affirm this second conviction.

## FACTS

The jury convicted Alberto Barreto of raping and attempting to rape Netta Arturo. Netta Arturo is a fictitious name. The two convictions arise from discrete facts on distinct days. Our statement of facts derives solely from trial testimony.

Netta Arturo and her close friend Veronica Zelaya met Alberto Barreto, in September 2012, at Broetje Orchards in Walla Walla County, where all three worked. Barreto volunteered to the two ladies that he repaired cars. Each woman's car needed mending. Barreto began repairing Arturo's vehicle first.

2

Alberto Barreto worked on Netta Arturo's car outside her Pasco apartment. Barreto performed the work in afternoons for about two months. Barreto loaned Arturo another car while he completed the work. He never fixed Arturo's car. Arturo occasionally drove her car, during the two month period, only to discern no difference in the operation of the car. When she questioned Barreto about the repairs, Barreto responded that the car encountered no difficulties while he drove it.

Netta Arturo intended to remunerate Alberto Barreto for the repair work. She never paid because Barreto never repaired the car.

During the time of the car repairs, Alberto Barreto occasionally asked Netta Arturo for a date. She declined. She had a boyfriend. Arturo and Barreto remained on friendly terms, and once Arturo, who had already prepared dinner for herself, invited Barreto to remain for dinner after he finished working on her car that evening.

On November 4, 2012, Alberto Barreto went to Netta Arturo's apartment to work on her car. According to Arturo, Barreto entered the apartment, grabbed her, and started snogging her. Arturo slapped Barreto in the face and asked him to leave the home. Barreto opened the front door, and Arturo believed Barreto intended to leave. Arturo walked toward her bedroom when Barreto grabbed her from behind. He threw her down on the bed where her two-year-old daughter lay sleeping, restrained her on the bed, removed her clothing, forcefully opened her legs, and penetrated her vagina with his penis. Arturo unsuccessfully attempted to kick Barreto.

3

According to Netta Arturo, the attack lasted less than five minutes. Arturo suffered bruises on one leg. As he left the apartment, Barreto threatened to hang Arturo if she called the police. On appeal, Barreto claims the two engaged in a consensual sexual encounter.

Upon Alberto Barreto's exit from the apartment, Netta Arturo showered. From fear, she did not call the police. She sought no medical attention.

Within three days of November 4, Veronica Zelaya visited Netta Arturo. Arturo told her friend of the rape. Zelaya encouraged Arturo to notify the police. Zelaya also urged Arturo to photograph a bruise on her left leg caused by Barreto. Arturo rejected the advice to contact the police, but she photographed her leg. The photograph was shown the jury during trial.

After November 4, 2012, Alberto Barreto sent frequent text messages to Netta Arturo. All messages were in Spanish, but translated into English for trial purposes. On November 9, 2012, Barreto texted Arturo and apologized:

> I want to apologize for being so a fool.
> . . . .
> A mistake I made. There is no forgiveness. I deserve it. I understand you. You really didn't like it. Or otherwise you will be with me. I consider myself lost. Good bye forever. I ask God for you to be happy.
> . . . .
> I hope you get your love back in your life and to continue waiting for it. And a man like him that wasn't going to find.

1 Verbatim Report of Proceedings (VRP) (Dec. 6, 2013) at 122-23. In another text, Barreto expressed his joy that his wish of going to bed with Arturo came true.

In late November on an unidentified day, Alberto Barreto appeared at Netta Arturo's apartment again, ostensibly to discuss the repairs to her car. Arturo did not invite Barreto inside. Barreto, nonetheless, entered the apartment, grabbed Arturo, and threw her on the living room floor. Arturo screamed, and Barreto left.

On November 25, 2012, Netta Arturo became pregnant with twins. Alberto Barreto later learned of the pregnancy and, believing to have fathered the children, threatened Arturo with hiring an attorney to gain custody of the twins when they were born.

On December 1, 2012, Alberto Barreto texted Netta Arturo and asked if she continued to date her boyfriend. Arturo replied affirmatively and directed Barreto to cease contacting and bothering her. The textative Barreto responded by directing Arturo to tell the boyfriend that Barreto had sex with her. He threatened to inform the boyfriend of the encounter if she refused. Barreto texted that he would "make it hurt as much as it hurt with him." 1 VRP (Dec. 6, 2013) at 124-25. In the text, Barreto labeled Arturo a "slut." 1 VRP (Dec. 6, 2013) at 125.

On December 2, Alberto Barreto texted Netta Arturo:

> I left you all fucked, didn't I, little bitch? They are waiting for you when you come out. The whole town is going to find out that I fucked you.

1 VRP (Dec. 6, 2013) at 132. Barreto also texted that he was sad and humiliated.

Arturo's boyfriend sent Barreto several text messages asking him to leave Arturo alone, to no avail. On December 19, Barreto sent another text, asking if he could give Arturo's daughter a gift. Arturo replied: no.

Alberto Barreto continued to harass Netta Arturo into the next year. On July 25, 2013, Barreto texted Arturo

> I'm going to leave you alone, my love . . . Until I don't fuck you through in the place that I want.

1 VRP (Dec. 6, 2013) at 131-32. On July 27, 2013, Barreto texted and threatened to take the unborn children:

> I feel that I want to go and take them away, get them out, out of your belly, to bring what's mine. They belong to me, not to you. I made them.

1 VRP (Dec. 6, 2013) at 130.

Netta Arturo's close friend, Veronica Zelaya, disliked Alberto Barreto. Barreto texted Zelaya in the middle of the night and solicited Zelaya's assistance in convincing Arturo to date him. Barreto once asked Zelaya for a date, but she fibbed and said she had a boyfriend.

On August 6, 2013, Netta Arturo, with the help of Veronica Zelaya, reported the November 2012 rape to the police. Pasco Police Detective Jesus Romero spoke with Arturo at her home, and Romero devised a plan to lure Barreto to the home. Although nervous, Arturo agreed to text Barreto and invite him to her apartment. Barreto had earlier texted Arturo while Romero interviewed Arturo.

6

Alberto Barreto arrived at Netta Arturo's apartment fifteen minutes after Arturo's texted invitation. Detective Jesus Romero greeted Barreto and identified himself as a police officer. In response, Barreto protested that he did not harass anyone and that he needed to talk to Arturo. Detective Romero placed Barreto under arrest and transported him to the Franklin County jail.

During questioning at the jail, Alberto Barreto first denied any sexual relationship with Netta Arturo. He admitted loving and pursuing, but not harassing, her. When Detective Jesus Romero later asked Barreto if he fathered Netta Arturo's twins, Barreto conceded a sexual relationship. He denied, however, being the father of the two. He cried upon admitting a sexual relationship. RP at 67. He confirmed that Arturo hit him in the face when he kissed her.

In key passages for this appeal, Detective Jesus Romero testified at trial:

> Q Did he admit that the sex had been a rape?
> A Yes and no.
> Q Describe what you mean by that.
> A Initially he stated if she's saying so, then I must have done it, go ahead and lock me up. I ma[d]e sure that I got a clarification on it and he said, no, afterwards.

1 VRP (Dec. 6, 2013) at 70-71. During cross-examination, Romero repetitively added:

> Q You asked him whether or not—him being my client—you asked my client whether or not he in fact raped [Netta]; right?
> A Correct.
> Q And he said no.
> A Initially he said yes.

7

Q Well, let's read your report. I asked Luis [Alberto Barreto] if he was saying he did rape [Netta]. And he said no. But backing up, Luis said that he wouldn't rape anyone.

A Correct.

Q He wouldn't do that; correct?

A That is in my report.

Q So he didn't say that he raped her, did he?

A He did during our interview. That's why I had clarification at the end.

Q Let's read your report then. I told Luis that [Netta] was accusing him of raping her during that time; right?

A Correct.

Q Luis said, or stated he wouldn't rape anyone, mentioned that [Netta]'s daughter was on the bed with them, he wouldn't do that; correct?

A Correct. His statement.

Q All right. He stated that if she stated that's so then he wanted to be locked up.

A Correct.

Q He didn't say that he raped her, did he?

A That statement alone leads you to believe that.

Q Those are your words; right?

A Those are my words; correct.

Q But then he tells you after you asked him, did you rape [Netta], he said no.

A Correct.

Q And then at the end you asked him directly, did he rape her, [Netta], and he said no.

A Correct, to get a clarification as I would before.

Q So I'm asking you once again, did he say to you that he raped her?

A He implied.

Q He did not use the words he raped her, did he?

A Correct.

Q The word implication is coming from you, not from him; right?

A From our interview; correct. That's why I clarified at the end.

Q And he said no; correct?

A And he said no.

1 VRP (Dec. 6, 2013) at 89-91.

8

Detective Jesus Romero speaks both English and Spanish, but Spanish is his principal language. He spoke to Netta Arturo in Spanish. RP at 55. He also interviewed Alberto Barreto in Spanish.

## PROCEDURE

The State of Washington charged Alberto Barreto with second degree rape occurring on November 4, 2012. The State later added a count of attempted second degree rape occurring in late November 2012. In an omnibus application, Barreto asserted a general denial and consent as a defense to the charges.

During trial, Netta Arturo, Veronica Zelaya, Pasco Police Officer Aiden Alaniz, and Detective Jesus Romero testified for the State. During Arturo's cross-examination, Alberto Barreto's defense counsel sought to elicit testimony that Barreto sent the text messages because he was unhappy that Arturo rejected him, not because of any rape. In his aggressive cross-examination of Netta Arturo, defense counsel suggested that Arturo befriended Barreto, never agreed to pay for Barreto's repair services, invited him to many meals, and willingly engaged in sex in part because of favors Barreto bestowed. Alberto Barreto did not testify.

At the close of trial, the trial court instructed the jury on the elements of second degree rape:

> To convict the defendant of the crime of rape in the second degree, each of the following three elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about November 1st to November 9th, 2012 the

9

defendant engaged in sexual intercourse with [Netta Arturo];
      (2) That the sexual intercourse occurred by forcible compulsion; and
      (3) That this act occurred in the State of Washington.

Clerk's Papers (CP) at 84. The trial court also instructed the jury on the defense of

consent. Jury instruction 15 read:

> A person is not guilty of rape if the sexual intercourse is consensual.
> Consent means that at the time of the act of sexual intercourse there are
> actual words or conduct indicating freely given agreement to have sexual
> intercourse.
> The defendant has the burden of proving that the sexual intercourse
> was consensual by a preponderance of the evidence. Preponderance of the
> evidence means that you must be persuaded, considering all of the evidence
> in the case, that it is more probably true than not true. If you find that the
> defendant has established this defense, it will be your duty to return a
> verdict of not guilty.

CP at 90. Instruction 15 was the standard instruction given before *State v. W.R.*, 181

Wn.2d 757 (2014) and the instruction that *W.R.* declares unconstitutional. Alberto

Barreto did not object to the giving of instruction 15.

During closing argument, defense counsel argued:

> But in terms of evidence to determine what actually happened—was
> there forcible compulsion used—something is lacking. What is lacking is
> physical evidence. There is no physical evidence of force being used. Now
> what we have are some bruises on a photograph. Photographs taken on a
> cellphone that are not dated. You don't know when those pictures were
> taken. You simply just don't know.
> So in essence, what we have is perhaps a case of a simple assault
> turning into a rape. It turns into something like that when Ms. Arturo's
> boyfriend finds out that she had had some form of a sexual relationship
> with my client.
>    . . . .
> The State alleges that in November 2012, two separate incidents
> took place. But even after the first incident my client apparently was

allowed, and did not use force, to enter into Ms. Arturo's apartment. And then there is an allegation of a second incident. But again, the first incident took place, why would you allow a second incident to take place? Somehow that doesn't make sense. There was no 911 call. There was never an effort made on the part of Ms. Arturo to see a medical doctor, to go to the emergency room. Those are key components of evidence that one should have, that one would want to have, especially in a case where there is a dispute about what took place between two different people. Those things are missing. . . .

. . . .

Whether or not my client, on one occasion, the first occasion, used forcible compulsion between November 1st and November 9th of 2012, to have sexual intercourse with a person who is the complaining witness. And then on the second occasion, the State alleges that my client used force in an attempt, plus a substantial step, to accomplish Rape in the Second Degree. There is no evidence to suggest that.

. . . .

Now I'll submit to each and every one of you the words that are on those texts aren't the most pleasant. They aren't. Some may find them offensive, some may find them disgusting. However there is a distinction between what is offensive and disgusting as opposed to what was a crime.

There may very well have been a crime committed, but it's not rape. What you have is maybe physical evidence of some other assaultive behavior, but not rape. There is no evidence of that.

. . . .

We also heard the testimony of Ms. Zelaya. Ms. Zelaya admitted that she is the best friend of the complaining witness in this case. She has a bias. She does not like my client. My client apparently tried to date her or ask her out. And apparently she rejected him, told him a minor fib, which is her right to do, but my client left her alone.

2 VRP (Dec. 9, 2013) at 239-43. During closing argument defense counsel did not expressly contend that Netta Arturo consented to sexual relations, but counsel implied the absence of forcible compulsion.

The jury found Alberto Barreto guilty of second degree rape and attempted second degree rape. The trial court convicted Barreto on both charges and sentenced him to one

hundred and twenty months to life imprisonment for second degree rape and one hundred and two months to life imprisonment for attempted second degree rape.

LAW AND ANALYSIS

Rape Conviction

Alberto Barreto appeals both his second degree rape and attempted rape convictions. We address the completed rape conviction first.

Alberto Barreto contends that the trial court provided the jury with an erroneous instruction on the affirmative defense of consent. He argues that, under *State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014), decided after his trial, jury instruction 15 violated his right to due process because it required him to prove consent by a preponderance of the evidence and relieved the State of its burden to prove the element of forcible compulsion beyond a reasonable doubt. He asks this court to apply *W.R.* retroactively to his case, reverse his conviction for second degree rape, and remand for a new trial with the proper allocation of the burden of proof.

The State argues that Alberto Barreto, under *W.R.*'s holding, failed to raise sufficient evidence of consent to implicate the due process clause. In a related argument, the State contends that the consent instruction constitutes harmless error. The contentions raised by the parties requires a discussion of *W.R.* The contentions also raise the question of the retroactive application of the landmark decision and whether the giving of the consent instruction constitutes harmless error.

12

*W.R.*

*State v. W.R.*, 181 Wn.2d 757 (2014) addresses the politically difficult and

conceptually delicate difference between forcible compulsion and lack of consent in the

context of the dreadful, misogynistic crime of rape. Some history lays the backdrop for

*State v. W.R.*, 181 Wn.2d 757 (2014) and the distinction between forcible compulsion and

absence of consent. Washington's 1909 criminal code described rape as:

> sexual intercourse . . . committed against [the person's] will and
> without [the person's] consent. . . . (2) When [the person's] resistance is
> forcibly overcome; or (3) When [the person's] resistance is prevented by
> fear of immediate and great bodily harm which [the person] has reasonable
> cause to believe will be inflicted upon her or him. . . .

Former RCW 9.79.010 (1909). The law was well settled under this statute that the State

bore the burden of proving an alleged rape victim's lack of consent. *State v. Chambers*,

50 Wn.2d 139, 140, 309 P.2d 1055 (1957); *State v. Thomas*, 9 Wn. App. 160, 163, 510

P.2d 1137 (1973). Courts often shortened the statutory phrase "without the person's

consent" to the nonword "nonconsent."

When the Washington Legislature recodified the criminal law in 1975, the

legislature replaced the concept of nonconsent with that of forcible compulsion. Under

the current statutory scheme, both first and second degree rape are defined as "sexual

intercourse" "by forcible compulsion." RCW 9A.44.040, RCW 9A.44.050. Neither the

first degree rape nor the second degree rape statute mention the want of consent.

Alberto Barreto was convicted under RCW 9A.44.050 for the crime of second

13

No. 32220-3-III
*State v. Barreto*

degree rape. The statute declares:

> (1) A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person:
> (a) By forcible compulsion.

In turn, RCW 9A.44.010 (6) defines "forcible compulsion" as:

> "Forcible compulsion" means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped.

Under RCW 9A.44.060, lack of consent is an element to the charge of third degree rape, but forcible compulsion is not needed to convict:

> (1) A person is guilty of rape in the third degree when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person:
> (a) Where the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct.

RCW 9A.44.010(7) describes "consent" as:

> "Consent" means that at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact.

In most circumstances, the absence of consent is the opposite side of the same coin as forcible compulsion. If the offender employs forcible compulsion, the victim necessarily did not consent. The converse is not true. In other words, the concepts of forcible compulsion and nonconsent overlap, but are not coextensive. The victim may not consent to sexual relations, yet the offender may not utilize forcible compulsion. In

14

other words, the offender may not employ physical force or a threat despite nonconsent. In the latter circumstance, the defendant may be convicted of third degree rape, but not second degree rape.

Our Supreme Court first faced the conundrum of addressing consent and nonconsent, under the 1975 recodification, with a charge of second degree rape in *State v. Camara*, 113 Wn.2d 631, 781 P.2d 483 (1989), *overruled by State v. W.R.*, 181 Wn.2d 757 (2014). The high court observed that nonconsent traditionally has been the essence of the crime of rape. The court reasoned that the concept of consent was retained in the new rape statutes in the element of forcible compulsion, its conceptual opposite. Thus, although the first degree and second degree rape statutes no longer expressly mention nonconsent as an element of rape, the eminent court held that consent remains a valid defense to a rape charge. The court failed to mention that consent is not always the organic reverse of forcible compulsion. The court recognized that the third degree rape statute did not require forcible compulsion but demanded nonconsent. Nevertheless, the court did not explain how the two concepts could be the opposite when the third degree rape statute allows a conviction for nonconsent when forcible compulsion is absent.

The difficult question posed on appeal, in *State v. Camara*, was on whom the burden of proving the defense of consent lies. The court observed the burden of proof with respect to a criminal defense has two dimensions, one statutory, the other constitutional. The statutory aspect is determined by reference to legislative intent: on

15

whom did the legislature intend that the burden of proof should lie? The constitutional

dimension arises from the due process requirement that the State bears the burden of

proving every element of a crime beyond a reasonable doubt. The high court concluded

that, on the statutory question, the removal from the prior rape statute of language

expressly referring to nonconsent evidenced a legislative intent to shift the burden of

proof on that issue to the defense. The new law channeled the jury's focus, via

instructions, on the culpability of the actor rather than the response of the victim.

Turning to the constitutional part of the burden-of-proof analysis, the court rejected the

argument that, because consent negated the element of forcible compulsion, the State

could not constitutionally impose the burden of consent on the defendant.

The Supreme Court affirmed *State v. Camara* in *State v. Gregory*, 158 Wn.2d 759,

147 P.3d 1201 (2006), *overruled by State v. W.R.*, 181 Wn.2d 757 (2014). The high court

noted the conceptual overlap between nonconsent and forcible compulsion.

Nevertheless, the court trusted the jury to still hold the State to bear its burden to prove

forcible compulsion beyond a reasonable doubt, despite a jury instruction informing the

jury that the defendant carried the burden of establishing the defense of consent.

In *State v. W.R.*, 181 Wn.2d 757 (2014), the state Supreme Court overruled both

*State v. Camara* and *State v. Gregory*. The court observed that, when an affirmative

defense negates an essential element of the charged offense, a criminal defendant need

only present sufficient evidence to create a reasonable doubt as to his guilt, rather than

16

prove the defense by a preponderance of the evidence. The court disagreed with its prior

precedent and concluded that the affirmative defense of consent negates the element of

forcible compulsion in the crime of second degree rape.

In *State v. W.R.*, the State charged W.R., a minor, with second degree rape of

another minor, J.F. W.R. admitted to having intercourse with J.F., but testified that the

interaction was consensual. He also testified that J.F. and he had once previously

engaged in sexual activity. J.F. testified to rape on both occasions. W.R.'s sister testified

that J.F. held a crush on W.R., and, although she did not witness the alleged rape, she was

in proximity when the intercourse occurred. After a bench trial, the trial court found

W.R. guilty and explained that W.R. failed to prove consent by a preponderance of the

evidence. On appeal, W.R. argued that, although the trial court's allocation of the burden

of proof was consistent with prior decisions, the allocation violated his right to due

process by requiring him to disprove an essential element of the rape charge. The court

held that a criminal defendant need only provide sufficient evidence to put the victim's

consent in controversy, at which time the burden shifts to the State to disprove the

defense beyond a reasonable doubt. Thus, "credible evidence of consent necessarily

raises doubt as to the defendant's guilt." *W.R.*, 181 Wn.2d at 766.

In *W.R.*, the State argued that consent will often, but not always, negate forcible

compulsion. Therefore, the two concepts do not completely overlap, and imposing the

obligation to prove consent on the defendant does not violate due process. The Supreme

17

Court answered by emphasizing the statutory definition of "forcible compulsion," which is "physical force which overcomes resistance, or a threat . . . that places a person in fear of death or physical injury." RCW 9A.44.010(6). Under this definition, consent always negates forcible compulsion.

### *Application of W.R.*

The Supreme Court issued *W.R.* after Alberto Barreto's trial. We must therefore decide whether to apply *W.R.* to Barreto's appeal. We hold that Barreto gains the benefit of *W.R.*

When a decision results in a new rule, that rule applies to all criminal cases pending on direct review. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987); *State v. Carney*, 178 Wn. App. 349, 359, 314 P.3d 736 (2013), *review denied*, 187 Wn.2d 1008, 331 P.3d 1172 (2014). A rule is "new" under a retroactivity analysis if it breaks new ground or was not dictated by precedent existing at the time of the defendant's conviction. *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 270, 111 P.3d 249 (2005). *W.R.* must be considered as announcing a new rule since it contradicted years of precedence and overruled two Supreme Court decisions.

Alberto Barreto did not object before the trial court to jury instruction 15 that imposed the burden of showing consent on him. The first sentence of RAP 2.5(a) reads:

> **Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

18

No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944).

RAP 2.5(a) contains a number of exceptions to the forfeiture or waiver rule. RAP 2.5(a)(3) allows an appellant to assert for the first time "manifest error affecting a constitutional right." Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988).

Washington courts and even decisions internally have announced differing formulations for "manifest error." Under one formulation, manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d at 688. Since jury instruction 15 infringed on Alberto Barreto's due process right to require the State to prove all elements of the crime, we hold the error to be manifest constitutional error. The error infringes the fundamental rule of due process that the State prove all elements of a crime beyond a reasonable doubt. We accept review of Alberto Barreto's appeal of the jury instruction, and we apply *W.R.* to his trial. Application of *W.R.* does not necessarily result, however, in reversal of the conviction for second degree rape.

19

*Evidence of Consent*

The State asks us not to reverse Alberto Barreto's conviction, despite *W.R.* The State contends that Barreto failed to provide sufficient evidence of consent to impose any burden on the State to disprove consent beyond a reasonable doubt. Although Barreto raised consent as an affirmative defense at his omnibus hearing and the trial court instructed the jury accordingly, the State argues that the jury did not consider whether Barreto had met his burden of proving consent because neither side mentioned the consent during closing argument. Under this argument, the jury instruction on consent was irrelevant. The State distinguishes *W.R.* on the grounds that W.R testified in his own defense and provided affirmative evidence of consent. Barreto did neither.

We agree with the State that, at least in dicta, the *W.R.* court held that a criminal defendant must provide sufficient evidence to put the victim's consent in controversy, only after which time the burden shifts to the State to disprove the defense beyond a reasonable doubt. *W.R.*, 181 Wn.2d at 766-67. The defendant may be tasked with producing evidence to put consent in issue, but the evidence need only create reasonable doubt as to the victim's nonconsent. *W.R.*, 181 Wn.2d at 768.

The *W.R.* court did not discuss the quantum of evidence needed to create a reasonable doubt of nonconsent, a reason why the court's mention that the defendant must present some evidence may be dicta. We decide to follow the rule, nonetheless, because we find no contrary statements from the Supreme Court on the question of

20

whether the defendant must supply some evidence of consent before the State holds the duty to prove nonconsent. In the analogous setting of voluntary intoxication, the defendant holds a burden of producing sufficient evidence to raise a jury question of intoxication, before the burden shifts to the State to prove beyond a reasonable doubt that intoxication did not negate an element of the crime. *State v. Carter*, 31 Wn. App. 572, 575, 643 P.2d 916 (1982). In another parallel circumstance of self-defense, to be entitled to a jury instruction on self-defense, the defendant must produce some evidence demonstrating self-defense. *State v. Walden*, 131 Wn.2d 469, 473-74, 932 P.2d 1237 (1997); *State v. Janes*, 121 Wn.2d 220, 237, 850 P.2d 495 (1993); *State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012). Once the defendant produces some evidence, the burden shifts to the prosecution to prove the absence of self-defense beyond a reasonable doubt. *State v. Walden*, 131 Wn.2d at 473-74; *State v. McCreven*, 170 Wn. App. at 462.

Alberto Barreto's assignment of error to jury instruction 15 is similar to arguing that the trial court should have given a jury instruction imposing on the State the burden of proving nonconsent beyond a reasonable doubt. Barreto's argument assumes that the jury heard sufficient evidence of consent to shift the burden of proof on the State. Thus, we analyze the appeal as raising the question of whether there was sufficient evidence to raise a jury question of absence of consent.

21

A defendant is entitled to a jury instruction that is supported by substantial evidence in the record. *State v. Griffith*, 91 Wn.2d 572, 574, 589 P.2d 799 (1979). Substantial evidence means evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise. *Helman v. Sacred Heart Hosp.*, 62 Wn.2d 136, 147, 381 P.2d 605 (1963); *In re Marriage of Vander Veen*, 62 Wn. App. 861, 865, 815 P.2d 843 (1991). An issue supported only by a scintilla of evidence should be withdrawn from the case. *State v. Zamora*, 6 Wn. App. 130, 133, 491 P.2d 1342 (1971). In determining whether the evidence is sufficient to support a jury instruction on an affirmative defense, the court must view the evidence in the light most favorable to the defendant. *Wilson v. Stone*, 71 Wn.2d 799, 802, 431 P.2d 209 (1967); *State v. Ginn*, 128 Wn. App. 872, 879, 117 P.3d 1155 (2005). In evaluating the adequacy of the evidence, the court cannot weigh the evidence. In determining whether the evidence is a scintilla only, the court cannot weigh the evidence. Judgment as to the credibility of witnesses and the weight of evidence is the exclusive function of the jury. *State v. Smith*, 31 Wn. App. 226, 228, 640 P.2d 25 (1982).

Assuming the State argues that Alberto Barreto needed to personally testify in order to create a question of consent and impose a duty on the State to establish nonconsent, we disagree. Such a rule would infringe on a defendant's right to remain silent. Also, a party's defense may be based solely on evidence presented by the State. An affirmative defense must be considered in light of all the evidence presented at trial,

without regard to which party presented it. *State v. George*, 146 Wn. App. 906, 915, 193 P.3d 693 (2008); *State v. Olinger*, 130 Wn. App. 22, 26, 121 P.3d 724 (2005). Sufficient evidence to gain an instruction on a defense can even be evidence inconsistent with the defendant's testimony. *State v. Callahan*, 87 Wn. App. 925, 933, 943 P.2d 676 (1997). If a defendant's defense can be based on the State's evidence, it follows that the burden of proof should switch to the State if the State presents some evidence that supports a defense that negates an element of the crime.

Alberto Barreto did not testify at trial. Netta Arturo consistently testified at trial and declared before trial that the sexual encounter was by forcible compulsion and not by consent. She provided details of the forcible compulsion. The aggressive cross-examination of Netta Arturo may have created some doubt in her testimony, but the responses provided no affirmative evidence of consent. The only other trial testimony addressing the sexual encounter between Netta Arturo and Alberto Barreto came from Detective Jesus Romero. Thus, we ask if the testimony of Romero, particularly his recitation of the interview with Barreto, presents sufficient testimony of consent. To repeat, "consent" is defined under Washington statute to mean that, at the time of the act of sexual intercourse or sexual contact, there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact. RCW 9A.44.010(7); *State v. Mares*, 190 Wn. App. 343, 353, 361 P.3d 158 (2015).

23

Detective Jesus Romero testified that Alberto Barreto claimed to have denied raping Netta Arturo. We do not know, however, what Barreto considers to be rape. Barreto never expressly declared that Netta Arturo engaged in consensual sex with him. Barreto disclosed to Romero no words spoken or actions taken by Arturo that could be considered consent.

A reviewing court encounters difficulty in determining the dividing line between sufficient evidence or substantial evidence that allows the defendant a jury instruction on one of his theories, on the one hand, and a scintilla of evidence that does not afford the defendant a jury instruction on the theory, on the other hand. Therefore, we look to other decisions that discuss the sufficiency or insufficiency of the evidence of consent. Many Washington cases address the sufficiency of evidence of nonconsent, but none directly discuss the sufficiency of evidence to show consent. We look for assistance from other jurisdictions, although we find little assistance elsewhere.

In *Morse v. Commonwealth*, 17 Va. App. 627, 440 S.E.2d 145 (1994), the trial court refused to give a jury instruction on consent of the victim, who was defendant Michael Morse's wife. The wife testified that she withheld consent and only submitted to intercourse because of threats of force. Morse testified in his defense, admitted to intercourse, but denied that the sex was the result of threats. He conceded that his wife was not responsive to his sexual advances and had said that she was tired, but he maintained that she did not object to the intercourse on the night in question. The

24

reviewing court reversed the conviction because Morse submitted sufficient evidence of consent. The failure to give the jury instruction was not harmless error.

In *People v. Simmons*, 213 Cal. App. 3d 573, 261 Cal. Rptr. 760 (Cal. Ct. App. 1989), two defendants argued that the trial court erred in not giving the jury an instruction on the defense of consent or a reasonable belief of consent. The reviewing court noted that, even when the defendant does not testify, circumstantial evidence of consent can be sufficient to warrant instruction on this defense. Neither of the two appellants testified. The victim, a prostitute, testified to sex resulting from forcible compulsion from both defendants in a hotel room. Neither of the defendants submitted any evidence supporting consent to sexual relations on the date at issue. One defendant, however, forwarded testimony that the victim willingly engaged in a sexual relationship at an earlier time. The court noted however that "[n]othing in the victim's conduct at the time of the offenses would support giving this instruction." *People v. Simmons*, 213 Cal. App. 3d at 580. Therefore, no instruction on the defense of consent was warranted.

Admittedly neither *Simmons* nor *Morse* are directly on point. *Simmons* addresses more a reasonable belief of consent rather than consent itself, but that distinction should favor the State in this appeal, since a reasonable belief is easier for the defendant to show than consent itself. At any rate, we judiciously read the decisions to require the defendant to show some conduct or comments by the victim preceding the encounter to support a finding of consent or some relationship between the parties, such as marriage,

25

that usually leads to consent before consent becomes an issue for resolution by a jury and for an instruction by the court to the jury.

In *State v. W.R.*, we find little evidence beyond the defendant's testimony that the sex was consensual to support a finding of consent. The sister's testimony that J.F. held a crush on W.R., and, although she did not witness the alleged rape, she was in proximity when the intercourse occurred is weak testimony. Still, in our appeal, we lack Alberto Barreto's testimony under oath denying rape and we lack testimony from any witness to a sexual attraction between Netta Arturo and Barreto, let alone testimony of circumstances leading to the sexual encounter on which a jury could find consent.

In the end, the statutory definition of "consent" controls. Consent means that, "at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact." RCW 9A.44.010(7). The trial testimony contains a complete absence of words or conduct of Netta Arturo preceding the encounter that could be construed as consent.

### *Harmless Error*

We have already ruled that Alberto Barreto was not entitled to a jury instruction imposing a burden on the State to show nonconsent beyond a reasonable doubt, since Barreto advanced insufficient evidence of consent. We now conflate this ruling with principles of harmless error and hold that the rendering of jury instruction 15 was harmless.

26

Jury instructional errors are presumed to be prejudicial. *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984). Nevertheless, a jury instruction that misstates an element of the crime is subject to harmless error analysis to determine whether the error has relieved the State of its burden to prove each element of the charged offense. *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002). In order for an appellate court to hold that an erroneous jury instruction was harmless, the court must be convinced beyond a reasonable doubt that the jury verdict would have been the same absent the error. *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *State v. Brown*, 147 Wn.2d at 341. When applied to an element omitted from, or misstated in, a jury instruction, the error is harmless if that element is supported by uncontroverted evidence. *State v. Brown*, 147 Wn.2d at 341; *State v. Weaville*, 162 Wn. App. 801, 815, 256 P.3d 426 (2011). The same should be true when no evidence supports the correction of an erroneous instruction.

Alberto Barreto's evidence of consent elicited on cross-examination consisted of Barreto fixing Netta Arturo's car and loaning her a vehicle to use in the meantime, the two being on friendly terms before the rape, and Arturo's failure to immediately report the rape to police or seek medical attention. None of the evidence shows any conduct or words consenting to intercourse.

We note that Alberto Barreto, during closing, did not claim the encounter was consensual. Barreto instead argued that there may be evidence of assault in his case, but

27

not rape. Neither party mentioned the erroneous jury instruction during closing. In *State v. W.R.*, the Supreme Court emphasized the trial court's mention of the defendant possessing the burden of proof.

*Morse v. Commonwealth*, 17 Va. App. 627 (1994) and *People v. Simmons*, 213 Cal. App. 3d 573 (1989), involved the failure to give any instruction. Our trial court gave a wrongful instruction. One might argue that the wrongful instruction that imposed a burden on Alberto Barreto confused the jury. *W.R.* speaks of the danger of reaching a wrong conclusion when the trier of fact acts within the incorrect framework. 181 Wn.2d at 770. At the same time, *W.R.* does not stand for the proposition that a jury instruction imposing the burden of proof on the defendant of consent is always reversible error. Supreme Court precedent compels us to engage in a harmless error analysis. A harmless error analysis leads to the conclusion that any confusion of the jury would occur only if Barreto forwarded some evidence of consent.

We note that, for the jury to have convicted Alberto Barreto of both crimes, the jury must have concluded that Netta Arturo was a credible witness and victim. In other words, the jury believed that Barreto forcibly imposed himself on Arturo. For this additional reason, the erroneous jury instruction may be considered harmless.

A decision of some import is *State v. Buzzell*, 148 Wn. App. 592, 200 P.3d 287 (2009). A jury convicted David Buzzell of indecent liberties. Consent is not a defense to indecent liberties under the criminal statute. Nevertheless, Buzzell argued on appeal,

28

based on *State v. Camara*, that the trial court should have instructed the jury on the defense of consent even if the instruction imposed the burden of proving the defense on him. This court agreed but found the error to be harmless because the jury necessarily believed the victim's story rather than Buzzell's story.

At trial, David Buzzell presented a defense that the sexual contact with the victim was consensual. He did not testify that the victim verbally expressed consent, but that the two hugged, held hands, and cuddled before he rubbed her breasts and otherwise engaged in sexual contact. Buzzell declared that the victim never asked him to stop and did not physically resist. The victim testified that Buzzell forcibly overcame her resistance. This court reasoned that the case turned on which testimony the jury believed. Even with the missing jury instruction, this case turned on whether the jury believed Buzzell. His testimony was the only way he could meet his burden of establishing consent. The jury could not have accepted his testimony and returned a conviction. Therefore, the instructional error was harmless beyond a reasonable doubt. Evidence supported consent, but the jury necessarily disregarded the evidence.

## Attempted Rape Conviction

Alberto Barreto next contends that his conviction for attempted second degree rape is not supported by sufficient evidence. Netta Arturo testified concerning the second November 2012 incident that Barreto returned to her apartment, grabbed her, threw her on the floor of her living room, and left when she started screaming. Barreto contends

29

that this testimony fails to show a "substantial step" toward committing rape in the second degree. The State responds that circumstantial evidence, such as the actual rape that occurred two weeks earlier and the text messages sent before and after Barreto threw Arturo to the ground in her apartment, sufficiently support the conviction. We agree with the State.

Evidence is sufficient if, after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980); *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). A defendant challenging the sufficiency of the evidence at trial admits the truth of the State's evidence and all reasonable inferences therefrom. *Witherspoon*, 180 Wn.2d at 883. Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). Only the trier of fact weighs the evidence and judges the credibility of witnesses. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

A jury may draw inferences from evidence so long as those inferences are rationally related to the proven facts. *State v. Jackson*, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989). A rational connection must exist between the initial fact proven and the further fact presumed. *Jackson*, 112 Wn.2d at 875. An inference should not arise when other reasonable conclusions follow from the circumstances. *State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999). The jury may infer from one fact the existence of

another essential to guilt, if reason and experience support the inference. *Tot v. United States*, 319 U.S. 463, 467, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943).

A person commits the crime of attempted rape in the second degree when, with intent to commit that crime, he performs any act that is a "substantial step" toward the commission of that crime. RCW 9A.28.020(1). A "substantial step" is conduct that strongly indicates a criminal purpose and that is more than mere preparation. *State v. Townsend*, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). The State is not required to present evidence of a specific intent or an overt act toward attempted penetration in order to support a conviction for attempted rape. *State v. Kroll*, 87 Wn.2d 829, 842, 558 P.2d 173 (1976). Circumstantial evidence "may be just as telling." *Kroll*, 87 Wn.2d at 842.

Sufficient evidence supports Alberto Barreto's conviction for attempted second degree rape. After repeated rejections by Netta Arturo, Barreto raped Arturo while her child slept on the bed next to her, and he then threatened her with more physical violence if she reported the attack. In the first incident, Barreto grabbed and threw Arturo to her bed in the same manner in which he grabbed and threw her to the floor of her living room a few weeks later. Barreto's multiple subsequent text messages to Arturo are sexual in nature and include threats of additional physical and sexual violence.

## CONCLUSIONS

We affirm Alberto Barreto's convictions for second degree rape and attempted second degree rape.

31

No. 32220-3-III
*State v. Barreto*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.